OPINION OF THE COURT — bc the
How. POWHATTAN ELLIS.
This cause came up from JeSbrson county, on a motion for a new trial, on the following grounds.
1st. Defendant was taken by surprise',
2. Because of the discovery of now and material evidence since the trial.
:j. Because the judge misdirected the jury as to (lie law;
”>. Because tho damages were excessive.
*81 The court, in giving its opinion in this case, will examine the several points relied upon by counsel in the order in which they have been presented to us.
First, that Joseph E. Davis, Esq. refused to give testimony,by which means defendant was deprived of evidence material to his defence. The position cannot be sustained, as it appears from the report of the judge below who tried the case, that defendants counsel declined urging the question, because it might have resulted in committing the witness for a contempt of court. But it should have been recollected by counsel, when he had all the means in his power to coerce the witness to testify in the cause, except so far as it related to the disclosure of professional secrets, he should have insisted on his evidence being introduced, under the instruction of court. And if he failed to do this, he cannot reasonably ask the court for reliefj for a party cannot take advantage of his own wrong.
Secondly, that new and material evidence has been discovered since the trial. This has not been fully established, and the court cannot take presumptions for facts.
The third and fourth points, that the judge misdirected the jury as to the law, and consequently the verdict should be set aside.
It appears from the report of the judge who tried the cause, that the negro, the subject of controversy between the parties, was the property of one Mrs. James during her life, and that the reversionary interest was in the two young Browns, as tenants in common. In the year 1813, the interest of James K. Brown, one of the tenants in common, was sold under execution, and purchased by the plaintiff, and that after the death of Mrs. James, the plaintiff came to the possession of the negro, and it is further stated, that some time after this, the defendant caused said negro to be seized and tied, and sent to the court, where he was sold, and it is further stated, that the defendant claimed under sales by execution to Philip Gilbert, but the execution was not given in evidence. The defendant, for and in consideration of the sum of three hundred dollars, purchased the interest of the other tenant in common. From this state of the case, it appears, that both plaintiff and defendant had an equal interest in the negro, as tenants in common, heeause they stood precisely in the same relation to each other as the two young Browns, having acquired their interest *82 respectively at different periods, and this can be done without a destruction of the tenancy in common, unless the unity of possession be destroyed by the act of the parties. Co. Lit. 189. B. 1 Salkeld 392. 1 East. 363. 2 Term Hep. 658. The question which now presents itself to the consideration of the court, is simply this. Have either of the parties, by their own act, destroyed that unity of possession, incidental to this species of property. The judge reported, there was such a destruction of the common ownership, in contemplation of law, as amounted to a severance of the tenancy in common, and instructed the jury to find for the plaintiff, if they believed there, was a conversion.
There could not have been a severance of the tenancy in common, in this case, but in one of two ways. First, by a destruction of the property, or secondly, by one of the parties. selling his interest'to the other, which would have constituted it an estate in severalty. If one of these facts had not been proved on the trial, a non suit would have been the result, for one tenant ’in common cannot maintain his action of trover against another. “ If two be possessed of chattels personal, by divers titles, as of a horse &c, and one take the whole to himself out of the possession of the other, the other hath no remedy, but to take this from him, who hath done the wrong, to occupy in common, &c. when he can see his time.” Littleton, Sec. 328. And Coke, in his commentary upon the above; passage, says, “if one tenant in common take all the ■chatties personal, the other has no remedy by action, but he may take them again.”. The modern decisions recognize the same doctrine as correct. 1 Day 301. 2d Haywood 186.
Lastly, as to the verdict-of the jury, and the excessive damages. It will probably be necessary to remark, that in this action of trover, the plaintiff does not trulystate his case, but is permitted to use a fiction, and say, that he lost the goods, the value of which he seeks to recover, which renders this action different from others sounding in damages. It was acknowledged by counsel, in argument, that a verdict was had for abou.t $1100j in favor of the plaintiff, and the value of the services of the slave whilst in possession of the defendent. Half the value of the negro, proved on the trial, would have been the proper measure of damages for the jury in their finding — and I believe this distinction is invariably taken, *83 for instance, if trover is brought for money in a bag, said to be worth so much, interest should be allowed by way of damages for the detention, as it is an article productive of a certain benefit. But when the property converted is not of this description, the full amount of the value of the chattels, and interest from the time of conversion down to the last act of the court in giving judgment, can only be recovered, otherwise, we should make the defendant answerable for a delictum, which is expressly waived by the plaintiff in the institution of his action, except so far as the evidence goes to prove the tort. 1 Bur. 31. And again, the law, as I have before said, suffers the plaintiff to resort to a fiction, and say that he has lost his property, and that it has come to the possession of the defendant, either by finding, or delivery, the value of which he seeks to recover. Is it not apparent from this view of the law, that the jury should have some fixed measure of damages? ■ Ithinkitis, and it would be absurd, on the trial, to let in evidence of consequential damages. The only alternative, is to resort to the rule kid down in the case of Wilson vs. Conine, 2 Johnson 280, to avoid the difficulty and perplexity of an arbitrary finding by the jury. 1st. Bay. 273. Froth every view of the case, we are clearly of opinion, that the verdict should be set aside, and a new trial awarded.