Mr. Chief Justice Sharkey
delivered this opinion.
The plaintiff brought an action against Ferriday, as maker, and Routh as indorser, of a promissory note. As to Routh, an agreed case is made, on which the court below rendered judgment in his favor. The question is whether the notice of protest is sufficient to charge Routh as indorser. This depends upon the construction of a power of attorney from .Routh to Ferriday. The note was made by Ferriday, payable to Routh, and indorsed in his name by Ferriday, his attorney.
By this letter, Routh appointed Ferriday his agent and attorney, “ general and special,” and proceeded in the following language, to wit: “ giving and by these presents granting'unto my said attorney full power and authority, for me and in my name, or in the name and for the use and benefit of him my said attorney, or for the use and benefit of, or in the name or names of any other person or persons whatsoever, to make, indorse, draw, accept, and negotiate all promissory notes, bills of exchange, drafts, and other securities of any and every kind whatsoever. To issue letters of credit, to transact all banking business, to make all manner of renewals and indorsements of my *481 name on all promissory notes, bills of exchange, drafts or other securities of any kind whatsoever, consequent or in any wise dependent upon such renewals, whether the same be payable to me, or to my said attorney, or to any other person or persons, or corporation, or company whatsoever. And generally to do all lawful acts and things whatsoever, concerning, or in any wise appertaining to the premises, as myself might or could do, if I was personally present and acting therein.” It contains a power of substitution, and concludes by declaring that it “is to be taken and understood in its fullest and most comprehensive sense and construction.”
This authority is certainly comprehensive in reference to the subject-matter embraced by it. And if it does not include power to receive notice of protest, it is the only power which it does not confer. Agencies are either general or special. A general agent, in the most comprehensive sense of the term, has unlimited power in the discharge of all kinds of business ; but a person put in the place of another to transact all business of a particular kind, is also a general agent. Paley on Agency, 163. An authority of this kind enables the agent to bind the principal by all acts within the general scope of his employment. 2 Kent, 620. A general agency allows more latitude in the discharge of the duty than a special one. The principal is bound by the acts of his agent, if he clothe him with powers calculated to induce innocent third persons to believe the agent had due authority to act in the given case. Ibid. 621, note c. In this instance, the power was so general as to induce the public to believe that it was without limit on the subject of notes, bills, and other securities. The principal held out his agent as having full authority in all matters “ concerning or in any wise appertaining ” to the making, indorsing, negotiating, renewing and discharging all notes, bills, and other instruments. The holder of a note, indorsed by Routh through his agent, who was about to have it protested, would very naturally conclude that Ferriday was the proper person to receive notice, because, by the power of attorney, he was substituted in the place of Routh in all matters concerning or appertaining to his note. Notice is a *482 matter which concerns or appertains to a protested note, and as such falls within the letter of the authority.
Ferriday was authorized to make, indorse for himself or for others, negotiate, renew, and transact all banking business. He indorsed this note for his own benefit, he being the maker, and negotiated it. It was payable in bank, and constituted therefore banking business. Over such business he had express authority, and here again is a clause which would authorize a notice to him. Under the circumstances, it would seem that notice to Ferriday was better than notice to Routh. Ferriday had made the note, had indorsed it, and was empowered to attend to its payment, even if that should fall on the indorser. No one can very well contemplate an extensive negotiation of commercial paper, without also contemplating the consequences to some extent, one of which is that some of it should be protested. This may be said to be an incident; at least it is a probable result. The power to negotiate, would therefore place the negotiator, as the individual to be looked to in such a contingency.
In short, this power seems to have been given in terms so broad, as to cover every possible description of transaction in any way connected with making, indorsing, renewing, negotiating and discharging all mamier of notes, bills, drafts, and other securities. Routh seems to have been disposed to confer, authority without limit; to transfer his individuality to Ferri-day, if the expression may be allowed, and the public were authorized to regard the authority as reserving nothing.
It appears that the notice was left at Ferriday’s counting room, addressed to Routh. It seems that notices of protest, addressed to Routh, were frequently left there, and a clerk in the house knew them by their exterior. It is scarcely probable that Ferriday was less astute, and it is a fair presumption that he must have been informed of the contents of this notice. He was Routh’s agent in commercial matters, and must have known that a notice left by a notary, related to that description of business. He was bound to inform his principal, and it is quite as fair to presume that he did so, as to presume that a *483 notice transmitted through the post-office has reached its destination. There surely can be no doubt, that if the notice had been addressed to Ferriday it would have been sufficient, under the peculiar circumstances.
In the case of Wilkins v. The Commercial Bank, 6 Howard, 217, notice left with an agent, acting under an implied authority, was held sufficient. The agency was presumed, because notices and other communications had been usually left with the agent, without objection. The facts are very much the same in this case. A witness states that letters and papers were frequently left at Ferriday’s counting house for Routh, which he received when he came or sent for them. A clerk in the Commercial Bank had left notices there for Routh, who never made any objection that such letters, papers and notices were left there. He transacted his business there.
It is laid down in Bailey on Bills, 274, that the authority to indorse notes, does not carry with it the power to receive notices of protest. That cannot be questioned. Such a power is special; it confines the agent to the single act. But this power does not so limit the power of the agent. It is a general authority, by which the agent is clothed with full power in making, indorsing, negotiating, renewing, and in doing whatever else might pertain to notes, bills and other securities. The authority, therefore, does not apply to this case. The conclusion is, that the notice was sufficient to charge Routh.
But I should be very willing to place my own judgment on a different ground. I do not believe, under the circumstances of this case, that any other notice was necessary than such as is justly chargeable to Routh, from Ferriday’s knowledge of nonpayment. No particular form of notice is requisite. A verbal notice is as good as a written one. Notice of protest is knowledge of protest; and the knowledge of the agent of any fact connected with the subject of the agency, is notice to the principal. It is a familiar principle, having a very general application, that the principal is chargeable with constructive notice of a fact which is known to his agent. “If,” says Paley, “an agent come to the knowledge of a fact while he is concerned for *484 the principal, this operates as constructive notice to the principal himself. For upon general principles of policy it must be taken for granted, that the principal knows whatever the agent knows.” Paley on Agency, 199. Ferriday was the maker of this note ; he must, therefore, have known of its non-payment. On the principle stated, Routh was affected by that knowledge, as it was a note indorsed under the authority. The object of notice is that the indorser may protect himself. The power and duty to protect his principal, were matters fully covered by Ferriday’s authority. A constructive notice to an indorser is sufficient. Notice sent by mail is nothing more. Story on Agency, 358 - 360, sec. 307 - 8; 4 Barn. & Ald. 200.
The consequence is, that the judgment must be reversed, and judgment rendered on the agreed case for the plaintiff.