SKRMETTA, DOING BUSINESS AS DEER ISLAND FISH & OYSTER CO. *v.* CLARK.

(Division A. Nov. 22, 1937.)

[177 So. 11. No. 32899.]

Mize, Thompson & Mize, of Gulfport, for appellant.

24

Hewes & Goodman, of Gulfport, and **W. L. Guice**, of Biloxi, for appellee.

'Argued orally by **Webb Mize**, for appellant, and by **W. L. Guice**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This is an appeal from a judgment in favor of the appellee, Joseph Clark, in the sum of $250, rendered by the county court and affirmed by the circuit court of Harrison county against the appellant, Marko Skrmetta, doing business as the Deer Island Fish & Oyster Company, for damages on account of the taking and carrying away, and the resultant loss of appellee's trawl or power boat.

The appellant assigns as error the giving of a peremptory instruction on the question of liability, and the submission to the jury of an issue of punitive damages; also that the court erred in not granting the peremptory instruction requested by appellant.

It appears that the boat in question, together with the equipment thereon, consisting of two trawls, two side lights, running light, fog horn, bell, fire extinguisher, furnace, and cooking utensils, was purchased by the ap-

pellee, on April 4, 1932, for the price of $475 on which $100 was paid in cash, and the balance to be paid, within a period of one year, according to the testimony of appellant, from the earnings of the boat, which was to be operated for shrimping purposes, but which balance was not to be paid within any specified time, according to the contention of the appellee.

Practically nothing was done toward operating this boat until the latter part of 1935, when the same was turned over to one Joe Tompley to run, and later to Andrew Lechner. The testimony then shows that, while Lechner was in charge of the boat in behalf of appellee, "Something went wrong" with the engine, and it had to be towed to the wharf of the appellant on November 28, 1935, where it remained for a few days, during which time Lechner kept it pumped out to keep it from sinking. Upon his return about the fourth day to move the boat, Lechner found that some of the equipment had been taken off by the appellant's watchman and placed inside the shed to prevent it from rotting or becoming ruined, and it was shown, without conflict in the evidence, that such would have been the result if such equipment had been allowed to remain wet in the boat.

Lechner then testified that the watchman refused to give him the equipment and asked him to leave the boat there at the wharf, saying that the appellant had told him, the watchman, that he was going to sell it. Both the appellant and the watchman denied that the watchman was authorized by appellant to remove the equipment, or to refuse to surrender the possession to Lechner, and the watchman denied having refused to surrender either the possession of the boat, or its equipment.

However, the appellant admitted later having tried to sell the boat to one John Storz, saying to him that appellee had it in charge; that later he gave permission to a man named Mike to take the boat across the bay to the shipyard for the purpose of having it examined

with a view of buying it. From other testimony in the case, it appears that Mike took the boat to the shipyard, where he learned there were outstanding liens for repairs thereon in the sum of $130, in addition to the $375 unpaid balance on the purchase price, and he then left it there, where it was later allowed to sink. Lechner informed the appellee about the boat being at the shipyard, but no effort was made to recover possession of it, and no demand was made of appellant in that behalf, except that the wife of appellee called appellant over the telephone and demanded that the equipment be returned to the boat, whereupon appellant informed her that he had never been on the boat and had not authorized the equipment to be removed therefrom.

Appellant testified that, if Mike had decided to buy the boat, appellant intended to take the matter up with the appellee, and that he had repeatedly offered to accept from appellee the sum of $100 in payment of his claim of $375 for the balance of the purchase price then long past due, and further that the equipment was all at his wharf, where it could have been obtained, at any time, by appellee if desired.

Under this state of facts, and in the absence of any pertinent testimony as to the value of the boat at the time of the alleged conversion, the court gave appellee the peremptory instruction on the question of liability for the conversion of the boat, and permitted the jury to assess damages as compensation therefor, necessarily based on testimony as to the original sale price thereof some three years prior thereto, which included the equipment. There was no conversion of the equipment shown, and no proof of its separate value at the time of the sale, or at the time of the alleged conversion of the boat.

The well-settled rule as to the measure of actual damages for the conversion of property is its value at the time of the conversion, with interest.

The proof contained in this record was not sufficient to enable the jury to intelligently fix the value of the boat, separate and apart from the value of the equipment at the time of the alleged conversion, and we are of the opinion that the testimony does not disclose a state of facts which would warrant the assessment of punitive damages.

The case, hovever, presents an issue to be determined by the jury under proper proof and instructions as to the measure of actual damages for the loss sustained.

Reversed and remanded.