THORP FINANCE CORPORATION *v.* TINDLE

No. 42944 April 6, 1964 162 So. 2d 497

*Howard G. Woodward, Charles L. Brocato,* Clarksdale, for appellant.

*Alexander, Feduccia & Alexander,* Cleveland, for appellee.

BRADY, TOM P., J.

This is an appeal from a judgment of the Bolivar County Circuit Court for the Second Judicial District for said county affirming a judgment for the appellee

in the Bolivar County Court for the Second Judicial District of said county.

This cause involves a suit for deficiency judgment in the sum of $665.85, plus 15% attorneys' fees in the amount of $490.97, against the appellee by the appellant arising out of a conditional sales contract entered into by the appellee on February 23, 1961. Under this conditional sales contract appellant filed his declaration against the appellee, who originally answered said declaration denying a legal sale of the equipment repossessed under the terms of said conditional sales contract and further alleging a breach of warranty on the part of the seller of the equipment furnished under the conditional sales contract.

Prior to the trial, appellee's answer was amended so as to allege a purported release from and cancellation of any deficiency under the terms of said conditional sales contract by an agent of the appellant with authority to so release the appellee. The record discloses that the appellee practically abandoned the defense of breach of warranty and relied almost entirely on the defense of purported release. The appellant objected to all the testimony offered by the appellee concerning the alleged release, which objection was overruled.

Upon the conclusion of appellee's testimony, and at the close of rebuttal testimony, appellant made motions for a directed verdict, both of which were overruled, and the case was submitted to the jury for determination. The jury returned a verdict in open court in behalf of the appellee. A judgment was entered in the county court for the defendant. The cause was subsequently appealed to the Circuit Court of the Second Judicial District of Bolivar County, which affirmed the judgment of the county court. From that judgment appellant has prosecuted this appeal.

The record discloses that on February 23, 1961, the appellant purchased certain farm equipment from the Hudson Service & Implement Company of Cleveland, Mississippi. A copy of the conditional sales contract reflecting this sale, the considerations therefor and the terms thereof, are all shown in Exhibit 3 for the plaintiff, which was introduced in evidence on the trial of the cause by the appellant. Subsequent to the sale of the farm equipment to the defendant by the Hudson Service & Implement Company for a valuable consideration, it assigned, sold and transferred the conditional sales contract to appellant at its office in Thorp, Wisconsin. It is a typical conditional sales contract whereby the vendor retains title, until paid in full, and a failure to meet the payments required thereunder makes all payments due. The vendor reserves and has the right to go, with or without process, upon the property of the purchaser and take said equipment, sell it and apply the proceeds received from the sale thereof against the indebtedness due, after first taking care of all costs incident to the sale. The sale can be private or public.

The notes necessary to pay the balance due were executed by the purchaser, the appellee here, and the appellee paid a part of the indebtedness due to appellant, but subsequently defaulted on the balance of the payments due. Appellant made necessary demands for payment on the appellee, who asserted that he was unwilling and unable to make any further payments. In due course, appellant repossessed the farm equipment by virtue of the terms of said conditional sales contract and with the approval and consent of the appellee, who voluntarily turned the equipment over to him, claiming the alleged release from any further liability. This farm equipment was subsequently sold at public sale in Cleveland, Mississippi, on March 13, 1962, after extensive public advertising. There were approximately two thousand persons present at the time of

the sale. The equipment was sold to the highest bidder, irrespective of the original sale price of the equipment. Proof shows that the equipment had been used for about one year and was in excellent condition and, according to the testimony of the appellee, was about as good as it was the day he bought it. It is contended by the appellant that an excellent sale price was obtained for the equipment which had been repossessed from the appellee. After applying the proceeds of the sale to the indebtedness due by appellee to the appellant, and after adding the costs of auction, repossession, repairs, less all refunds and credits, there remained an indebtedness due and owing to the appellant in the sum of $665.85, for which this suit was originated.

The record further reflects that during the trial of the case the appellant introduced proof which was necessary to sustain its cause of action and that the appellee failed in his attempts to contest the validity of the sale of the equipment and was forced to rely upon the testimony of himself, his wife, and John A. Hudson, the manager of the Hudson Service & Implement Company, which originally had sold the equipment to the appellee, that a Mr. Deininger, an employee of the appellant at the time, had told the defendant that if he would voluntarily release the equipment involved to the appellant, there would be no further action against him. To this oral testimony, which charged the terms of the written conditional sales contract, the appellant objected on the grounds that the alleged oral release was contrary to the terms of the conditional sales contract under which the equipment was originally sold and was wholly without consideration. The continuing objection which was granted the appellant was overruled by the trial court. An additional reason was also urged by the appellant, which was that the appellee failed to establish the authority of the purported agent of appellant, the Mr. Deininger, to grant such a release on behalf of appellant.

Appellee did not attribute any such statement of release to either or any of the appellant's employees who were present on the trial of the cause, one Mr. David Cyr or Mr. Terry Dorne, who had also been present in Cleveland, Mississippi, at the time of the repossession of the equipment. Mr. Deininger was not available at the trial of the cause because his services with the appellant had been terminated.

First, reviewing the testimony in the record for the express purpose of determining whether or not the statements made by appellee, his wife, and Mr. Hudson are sufficient to establish the contention of the appellee that his remaining indebtedness under the conditional sales contract would be cancelled and annulled by Deininger upon his voluntarily surrendering the equipment involved, we find that the testimony of the appellee and his wife presents this disputed fact.

The testimony of Mr. Hudson however fails to clearly establish this purported release. Inference and implication must be utilized in order to establish the assurance of a release by Deininger from the over-all testimony of Hudson which was vacillating. The gist of Hudson's testimony finally was that Deininger and he agreed that appellee could not possibly pay the balance due, that the equipment was well worth the unpaid balance, that the appellant would not stand a chance of collecting it by suit, and therefore Hudson advised the appellee to surrender the equipment. Hudson further stated that "the only thing that was ever quoted to me by Mr. Deininger or any of the rest (of) representatives of the company, that they were going to have their sale, take their loss, and get out of the State of Mississippi."

We can concede however this major premise urged by appellee and hold that the testimony of appellee, his wife and Hudson conclusively establishes the promise by Deininger to release the appellee from all indebtedness due by him upon his voluntary surrender of the proper-

ty. The decision in this case rests upon two other fundamental issues which are urged in appellant's assignment of errors.

The errors assigned by the appellant fall within four categories, two of which need not be considered. The two which do require attention are first, the failure of the trial court to grant a peremptory instruction at the conclusion of the presentation of appellee's testimony and at the close of appellant's rebuttal testimony; and second, the failure of the trial court to enter a judgment for the appellant notwithstanding the verdict. Under the second proposition appellant urges (a) that the appellee failed to carry the necessary burden of proof to establish the scope of the authority of Deininger, agent of the appellant, to release the appellee, and (b) that there was no valuable consideration for the purported release of the appellee by appellant.

 █ In regard to the first part (a) of the second proposition urged by the appellant, namely that the appellee has failed to carry the burden of proof necessary to establish the actual authority of Agent Deininger to enter into the agreement with and release of the appellee, we find the following to be true. The burden of proving the authority rests upon the person asserting the agency and relying upon said authority. This was pointed out in Pan American Petroleum Corporation vs. Bardwell, 203 Miss. 833, 33 So. 2d 451; Stilley vs. Illinois Central Railroad Company, 209 Miss. 414, 47 So. 2d 840; and National Cash Register Company vs. Giffin, 192 Miss. 556, 6 So. 2d 605; it has been pointed out in an action by a seller to recover an unpaid purchase price, that the burden of proof was upon the buyer, who plead in this case the affirmative defense of settlement and release through an authorized agent of the seller to show first, the fact of agency, second, adequate authority, and third, the act of settlement and release. The appellee here is forced to rely largely upon

the testimony of his main witness, Hudson, and witness Hudson's testimony wholly fails to establish the authority of Deininger to make any binding agreement on behalf of appellant other than in the purchase of contracts where it is conceded that he has the authority to buy. It is to be noted that it was witness Hudson who testified that he recommended to the appellee that he voluntarily release the equipment. It was the interpretation of the discussion which took place between Deininger and Hudson on the part of Hudson which led him to believe that the appellant was going to take his losses and get out of Mississippi, but there is lacking a firm statement on the part of the appellant that he would not seek to recover any deficiency out of the appellee from the sale of the repossessed equipment. Hudson was not employed by appellant, and had no authority to obligate it. Hudson was but the vendor in, and assignor of, the conditional sales contract of the vendee, appellee. Although Hudson at one point testified that Deininger had the authority to give the equipment away if he wanted to, which to say the least taxes our credulity, nevertheless he conceded that "he has superiors over him that could overrule him in anything."

"As far as a deficiency was concerned, I don't think Mr. Deininger - - he has superiors over him that could overrule him in anything." . . . Q. Mr. Hudson, as far as you knew, as far as the release of the deficiency, who to sue, and who not to sue, you knew that Mr. Deininger had no authority in that capacity; didn't you? A. Mr. Deininger had no more authority to sue a man - - no representative of that company has except the officials that can give the authority to sue a man. Q. And they had no more power to give a release than they had to sue a man? A. They had the power to buy a contract - - I would say that he had that authority. Q. But as far as you know, you really don't know what

his authority was, do you? A. The only authority I know he had, he could buy a contract.''

■■ In spite of liberal inferences the testimony offered by the appellee in the trial fails to meet the burden of establishing the authority of Deininger to waive the balance which was due the appellant, provided the appellee would voluntarily release to appellant's agents the equipment upon which default in payment had been made. Appellee and his wife knew nothing about Deininger's authority under appellant.

In addition, the testimony of appellant's witness David Cyr on direct and cross-examination, and the rebuttal testimony of Richard Witt for appellant, forces us to the inescapable conclusion that the preponderance of the testimony in this cause proves that Deininger did not have the authority to release appellee from paying the balance due under the conditional sales contract.

The appellee was unable to refute or contradict to any extent the rebuttal testimony offered by the appellant in this regard. Furthermore, the record not only does not indicate that Deininger made any representations to the appellee that he had authority to make any agreements for release of deficiency, but on the other hand the appellee himself testified that Deininger had told him that he had no authority to accept partial payments on the balance due under the contract, and it follows that if Deininger had no authority to accept partial payments, it can hardly be logically argued that he had authority to make any such discharge and release as is claimed by the appellee.

■■ In the case of W. T. Raleigh Co. v. Fortenberry, 148 Miss. 604, 114 So. 393, we have a similar situation. In this case we held that a creditor's letter to guarantors authorizing his agent to adjust a claim against those guarantors did not confer authority to release the guarantors from liability. In the case of Dahnke-Walker Milling Co. v. T. J. Phillips & Sons, 117 Miss. 204, 78

So. 6, we held that the traveling salesman had no apparent authority to compromise a claim for damages for goods not shipped and that a compromise made by him was no defense to an action for the price of other goods. Furthermore, we have held that the authority of agents may not be proved by the declaration of the agents outside of court. See Cue Oil Co. v. Fornea Oil Co., 208 Miss. 810, 45 So. 2d 597; Riechman-Crosby Co. v. Dinwiddie, 117 Miss. 103, 77 So. 906. ■■ ■ Any statements purporting to be made by Deininger to Hudson would not be admissible in establishing his, that is, Deininger's, authority to compromise claims. National Cash Register Co. v. Giffen, supra; Kimmons v. James, 243 Miss. 535, 137 So. 2d 912.

In Foye Tie & Timber Co. v. Nichols, 128 Miss. 709, 91 So. 395, we held that the mere sworn statements of an agent are not competent to establish that the agent had authority to make a certain contract. Therefore, it appears that Hudson's testimony was insufficient to establish the authority of the agency relationship relied on by the appellee in this cause. There is nothing in the testimony of the appellee himself or of his wife which indicates that Deininger made any representations to the appellee or his wife with reference to his authority to compromise and settle any balance due under the conditional sales contract.

■■ ■ Considering next (b), the second part of the proposition, that there was no valid consideration given by the appellee to the appellant for the purported release, it is obvious that the appellant and assignee of the conditional sales contract was placed in the same legal position of the assignor insofar as the rights and remedies provided by the conditional sales contract are concerned. It should be noted that Paragraph 3 of the terms and conditions of the contract, subsections (a), (b) and (c) are as follows:

"In the event of any such default, seller may, at its option and without notice to buyer, (a) declare the entire unpaid time balance hereunder to be immediately due and payable, and proceed at law or equity for the collection thereof; (b) repossess the property sold hereunder without notice, demand, or legal process, whether said property is attached to or part of the realty or not, and peaceably enter upon the premises where said property may be and remove and hold the same absolutely as the property of seller, and retain all amounts theretofore paid by buyer as payments for rental and depreciation of said property while in buyer's possession; (c) sell said property or any portion thereof for buyer's account at public or private sale, upon such terms and in such manner as seller shall determine, with the right of seller to become a purchaser at such sale and out of the proceeds thereof paying, first, the expenses of sale; second, the expenses of retaking, keeping and storing; third, the unpaid time balance; and fourth, the surplus, if any, to buyer. Buyer agrees to pay on demand any deficiency."

From the foregoing it is obvious, therefore, that when the appellee agreed to voluntarily turn this equipment over to the appellant, he did nothing more than he was required to do under his contract. It can not be urged here with merit that because the appellee did what his contract required him to do, and thereby did not force the appellant to go to the expense of repossessing the property by replevin, that this compliance, or rather forbearance of requiring a replevin action, can be considered to be a valid consideration relinquished by the appellee in behalf of the appellant. Therefore, there was absolutely no valuable consideration for the purported oral release, by the alleged authorized agent of the appellant, of the appellee from any deficiency which was then due and owing, or which would be due and owing after the sale, if the sale did

not bring more than the balance of the purchase price then due and owing.

In 1962 this Court handed down a decision in Kimmons v. James, supra, which controls the questions of law presented in the case at bar. In that case we held that there was absolutely no consideration for purported oral release for a deficiency and further held that any testimony relative to that release should not have been allowed on the trial of the case. There the conditional seller of an automobile brought an action against the conditional buyer for a deficiency judgment after the buyer defaulted in payments under the conditional sales contract and had surrendered the automobile to the seller. We held that the buyer was not relieved from liability by alleged agreement that if he surrendered the automobile to the seller he would not be required to make any further payments on the contract since there was no consideration for the alleged agreements to relieve the buyer from making further payments. The defendant testified that he returned the car with the distinct understanding that the car being returned would cancel all remaining debts due under the conditional sales contract which he had executed. The pertinent contract provisions were as follows: ''Customer agrees in any such case to pay said amount or, at holder's election, to deliver the car to the holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for the use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of

this contract and shall receive any surplus.'' It is obvious, therefore, that the contract provisions in that case and in the case at bar are very similar, if not identical, and the legal obligation to give up possession of the property is present and incumbent upon the buyer in both cases. There is no denial here on the part of appellee that he was in default under the terms of the conditional sales contract. Just as it was pointed out in the Kimmons case, so it is true in the case at bar; that when James in the Kimmons case quit making payments, it became his duty under the contract to surrender the car, and at the time he surrendered the car he did only that which he was already obligated to do; so likewise in the case at bar, when the appellee failed to make his payments and could not continue to do so, it was then his duty to relinquish the equipment and deliver the same under the terms in the contract to the assignee, appellant here. It is obvious therefore that just as we held in Kimmons v. James, there was no consideration for the alleged cancellation of the contract under the terms thereof, so must we hold in the case at bar that there is no consideration here for the cancellation of the terms and conditions of the conditional sales contract requiring the appellee to pay the balance due. 17 C. J. S., Contracts, Sec. 112, pp. 830-834. This same rule of law was announced in Hattiesburg Production Credit Assn. v. Smith, 191 Miss. 119, 1 So. 2d 768, where the payment of a note was in default. In that case a rent check smaller than the amount of the note was given and it was urged that there was an agreement and understanding that the giving of this check would effect an extension of the loan. We held in that case that an agreement to extend payment in order to be binding must be supported by sufficient considerations. We describe the agreement, if made, as a mere indefinite indulgence and said that there was not sufficient consideration to support an executory

agreement. In that case we held that the debtor in paying a portion of the debt did not give sufficient consideration for the extension of the note. See cases cited in Kimmons v. James, supra, including the case of Leggett vs. Vinson, 155 Miss. 411, 124 So. 472, wherein we pointed out that "where the promise of one is merely a repetition of a subsisting legal promise, and the duties, obligations and burdens imposed upon such party by the contract are in no way varied, altered, or changed, there is no consideration for the promise of the other."

The appellee here, when he agreed to release the equipment purchased under the conditional sales contract, did nothing more than what his duties and obligations and burdens required him to do under the contract when it was executed, and the obligations under the contract were in no way varied or altered or changed. Therefore, the alleged promise of the appellant was without consideration sufficient for the creation of any legal binding relationship. The case of Kimmons vs. James, it seems to us, settles the proposition that there was no consideration for the alleged agreements to relieve the appellee from making any further payments by virtue of his giving up the possession of the equipment here involved, which he had agreed to do under the original conditional sales contract. It is unnecessary for us to consider here whether or not the lower court erred in permitting parol evidence to be introduced to vary, alter or modify the terms of the written conditional sales contract, over the timely and continuous objections of counsel for appellant, for the reason that it comes within the provisions of the statute of frauds.

For these reasons, we find that there was ultimately no factual issue for determination by the jury in this case, and that there was presented solely a question of law. The trial court should have given the appellant a peremptory instruction after its rebuttal testimony.

Therefore, the judgment is hereby reversed and judgment is hereby entered for the appellant.

Reversed and judgment for the appellant.

*Lee, C. J., Ethridge, Rodgers and Patterson, JJ.,* concur.