**TEXTILE SUPPLIES, INC.,**
**Plaintiff-Appellant,**

v.

**Charles GARRETT, d/b/a Carpet Center,**
**Defendant-Appellee.**

**No. 81–4453**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1982.

Lee N. Perry, White & Moore, D. Knox White, Gulfport, Miss., for plaintiff-appellant.

William L. Denton, Biloxi, Miss., for defendant-appellee.

Before RUBIN, JOHNSON and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this bench-trial diversity case a wholesaler seeks to recover from a retailer for carpets sold on open account and for other carpets received but not paid for by the retailer. Although the retailer admitted owing "somebody" about $10,000 even after deducting all expenses, he was found to owe nothing, and the receipt of monies by the wholesaler's salesman, who was found to lack either actual or apparent authority, was held to constitute payment to the wholesaler. Concluding that the district court (1) made a clearly erroneous finding of fact as to one of the shipments of carpet and (2) made an error of law as to the other, we reverse and render a judgment for the wholesaler for the amount proved due.

## I

Textile Supplies, Inc. ("Textile Supplies"), a Georgia corporation, distributes carpets. One of its salesmen was Alvin Couch. Couch obtained an order from Charles Garrett, who did business under the trade names Carpet Center and Gautier Carpet Center, for carpets costing $24,093.95. Garrett issued four checks payable to Textile Supplies; one of these was returned because Garrett had insufficient funds to cover it. Couch somehow obtained the returned check and another of the checks, took them to Garrett, and instructed Garrett to issue two checks totaling $10,097.13 to Cartersville Textile Sales, Inc. ("Cartersville"), an entity that was in effect Couch's alter ego. Garrett followed Couch's instructions and Couch then cashed the checks and appropriated the proceeds.

Couch later learned that Textile Supplies had shipped carpet invoiced for $76,923.81 to Surplus and Salvage Sales ("Surplus and Salvage") of Fort Walton Beach, Florida. He caused this shipment to be delivered instead to Garrett.[1] Garrett made a $10,-000 down payment to Couch for the shipment but never purported to pay anything more for it.

The president of Textile Supplies, Marion Corbett, arranged with Garrett to have the unsold part of this shipment returned to Textile Supplies. Two Textile Supplies employees went to Garrett's place of business and, after some delay, received carpet valued at $46,158.86. Textile Supplies claims reimbursement for the $5,611.39 it spent to recover this carpet, the $30,764.95 of unrecovered carpet that Garrett had already sold, and the $10,097.13 remaining unpaid on its account with Garrett from the earlier shipment of carpet.

None of the facts appear to be controverted. Textile Supplies sent Garrett invoices on its stationery for the first shipment. These invoices were accompanied by lists of carpet on the stationery of Textilon, Inc., a corporation also managed by Corbett. Couch did not represent himself as an officer of either corporation. The district court correctly found that, when Couch instructed Garrett to write checks to the order of Cartersville and when he shipped the $76,000 of carpet from Cartersville, he had no apparent authority to represent Textile Supplies. Yet the district court also found that Garrett "actually thought that he was dealing with Couch as a principal and that Couch had no accountability to anybody." Citing only one case, which held that a party who deals with a person who is in fact an agent, although his agency is not disclosed, may treat the agent's representations as if they had been made by the previously unidentified principal,[2] the district court dismissed Textile Supplies' claim. The district court's opinion says nothing of the approximately $31,000 in carpet received and sold by Garrett and admittedly never paid for.[3]

## II

The district court's findings of fact must be accepted unless clearly erroneous. *Security Ins. Co. v. Dudds, Inc.*, 648 F.2d 273, 275 (5th Cir. 1981); Fed.R.Civ.P. 52(a). An appellate court may consider the findings that far in error when "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948); *accord, e.g., O'Toole v. New York Life Ins. Co.*, 671 F.2d 913, 914 (5th Cir. 1982).

■ There was no evidence to support the finding that Couch represented himself as a principal when he instructed Garrett to write two checks to the order of Cartersville. Garrett testified that, when he ordered the carpet, he knew Couch to be a

---

1. Couch was eventually convicted of federal criminal offenses as a result of these and other activities.

2. *United States Nat'l Bank v. Laflore Grocer Co.*, 147 Miss. 43, 51, 112 So. 700, 703 (1927).

3. Garrett conceded that, after deducting the $10,000 down payment and $11,000 for freight, storage, and employee expenses, it owed somebody about $10,000 for this carpet.

salesman for Textile Supplies. The invoices to Garrett stated: "NONFACTORED INVOICE. PAY DIRECT TO TEXTILE SUPPLIES, INC." Garrett first wrote the checks to the order of Textile Supplies. It was only after Couch told him to issue new checks that Garrett made the checks payable to Cartersville. Obviously, he was then misled by Couch but the true fact, that Textile Supplies was the company to which the money was due, had been made clear to him.

■ Under Mississippi law,[4] persons dealing with an agent have a duty to inquire into his authority and, if the agent has no authority, a principal is not bound by the agent's agreements unless the principal either ratifies them or acts with reference to them as to constitute waiver or estoppel. *Consumers Credit Corp. v. Swilley*, 243 Miss. 838, 848, 138 So.2d 885, 889 (1962). A buyer who makes payment to an agent not authorized by the principal to collect it has not paid the principal and remains liable for the sum due. *Sumrall v. Kitselman Bros.*, 101 Miss. 783, 58 So. 594 (1912).

■ The general rule holding a principal liable for the acts of an agent when the principal has entrusted the management of his entire business to the agent[5] can furnish no comfort to Garrett. It is patent that Textile Supplies had not made Couch its general manager and that he was only a salesman. One who relies on the acts of an agent to bind his principal has the burden of proving the authority of the agent. *Thorp Fin. Corp. v. Tindle*, 249 Miss. 368, 375, 162 So.2d 497, 500 (1964); *Cue Oil Co.*

*v. Fornea Oil Co.*, 208 Miss. 810, 815, 45 So.2d 597, 599 (1950). Garrett has failed to carry that burden.

### III

The second shipment of carpet requires a different analysis but yields a similar result. Neither of the parties maintains that Couch acted as Textile Supplies' agent in selling this carpet to Garrett. Textile Supplies contends Couch stole the carpet; Garrett insists it ordered the carpet in the belief that Couch represented Cartersville and not Textile Supplies. Even if, as Garrett urges, we accept the district court's conclusion that Garrett bought the second carpet shipment from Couch in the good faith belief he was a principal, or at least a representative of Cartersville and not Textile Supplies, we must reverse its judgment in favor of Garrett.

■ Textile Supplies has consistently argued that Couch stole this carpet from it. Although the record is not pellucid on this point, Textile Supplies offered uncontradicted testimony that Couch stole invoices from Surplus and Salvage, forged Cartersville's name and address on them as consignee, and diverted the carpet shipment to Cartersville and then to Garrett.[6] There is no evidence that Textile Supplies ever dealt with Couch on this shipment. To the contrary, Corbett testified he had never heard of Cartersville. He testified further that Textile Supplies' records show only that the carpet was destined for delivery to Surplus and Salvage.

**4.** The parties do not dispute the application of Mississippi law to this case. *See generally FMC Fin. Corp. v. Reed*, 592 F.2d 238, 241–42 (5th Cir. 1979); *Wright v. Standard Oil Co.*, 470 F.2d 1280, 1284–86 (5th Cir. 1972), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973); *Hyde Constr. Co. v. Koehring Co.*, 321 F.Supp. 1193, 1207 (S.D.Miss.1969).

**5.** *Acts of Manager Appearing to be Owner*

An undisclosed principal who entrusts an agent with the management of his business is subject to liability to third persons with whom the agent enters into transactions usual in such businesses and on the principal's

account, although contrary to the directions of the principal.
Restatement (Second) of Agency § 195; *see id.* comment C (disposition of assets); *Wilcox v. Routh*, 17 Miss. (9 S. & M.) 476, 481 (1848).

**6.** Count 13 of the criminal indictment under which Couch was later charged, *see* note 1 *supra*, states: "On March 3, 1980, ALVIN LEE COUCH stole 116 rolls of carpet, more or less, from Marion Corbitt [*sic*] d/b/a Textile Supplies, Inc. and Textilon, Inc., Cartersville, Georgia, and caused it to be shipped to Charles Edward Garrett d/b/a Gautier Carpet Center, Gautier, Mississippi and Carpet Center, Gulfport, Mississippi."

Garrett argues it nevertheless acquired valid title to the carpet under Miss.Code Ann. § 75–2–403(1)(d), (2), (3) (1972).[7] This argument lacks merit. The wrongdoing in this case was perpetrated by Couch, who apparently never dealt with Textile Supplies on this shipment. We cannot say Couch obtained the carpet through a "transaction of purchase." *See Paschal v. Hamilton*, 363 So.2d 1360, 1361 (Miss.1978). Moreover, even if there was such a transaction, it does not appear to have been between Textile Supplies and Couch. The intended transaction was between Textile Supplies and Surplus and Salvage. Thus Textile Supplies never "intended, however misguidedly, that [Couch] would become the owner of the goods." *American Standard Credit, Inc. v. National Cement Co.*, 643 F.2d 248, 268 (5th Cir. 1981); *see Marvin v. Connelly*, 272 S.C. 425, 427, 252 S.E.2d 562, 563 (1979). Because Textile Supplies never dealt with Couch, the wrongdoer, in a transaction of purchase, Garrett could not acquire valid title under § 75–2–403(1)(d).

There is no evidence that Textile Supplies ever entrusted Couch with the second carpet shipment. The evidence establishes instead that Couch obtained possession of the carpet without the knowledge of, and contrary to the wishes of, Textile Supplies.[8]

Because Textile Supplies never dealt with Couch to effect the alleged "entrusting," Garrett could not have obtained from Couch valid title to the carpet under § 403(2), (3).

When Couch stole the carpet from Textile Supplies he acquired only "void title." *American Standard Credit, Inc. v. National Cement Co.*, 643 F.2d at 268; *Allstate Ins. Co. v. Estes*, 345 So.2d 265, 266 (Miss.1977). He could not have passed valid title even to a good faith purchaser. *Id.; Gurley v. Phoenix Ins. Co.*, 233 Miss. 58, 61, 101 So.2d 101, 102 (1958). Textile Supplies, therefore, retained title to the carpet even after Garrett obtained it from Couch. "[E]ven though the sale of the property is made to a bona fide purchaser for value, if it is stolen property, the person from whom it was stolen is not divested of his title." *Walker v. Johnson*, 354 So.2d 792, 793 (Miss. 1978).

The portion of the second shipment that Garrett either sold or refused to return to Textile Supplies was converted by Garrett to his own use.[9] He thereby rendered himself liable to Textile Supplies for the value of the carpet at the time of conversion [10] plus interest to the time of trial.[11] Textile Supplies is also entitled to

---

7. Section 75–2–403(1)(d), (2), (3) provides:
   POWER TO TRANSFER; GOOD FAITH PURCHASE OF GOODS; "ENTRUSTING."
   (1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though ...
   (d) the delivery was procured through fraud punishable as larcenous under the criminal law.
   (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
   (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

8. *Cf. Toyomenka, Inc. v. Mount Hope Finishing Co.*, 432 F.2d 722, 728 (4th Cir. 1970) (entrustment of goods contrary to seller's express instructions).

9. Conversion is the unlawful and wrongful exercise of dominion, ownership, or control over the personal property of another, to the exclusion of the same rights by the owner. *Bankers Life Ins. Co. v. Scurlock Oil Co.*, 447 F.2d 997, 1004 (5th Cir. 1971); *see Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss.1981); W. Prosser, Handbook of the Law of Torts § 15, at 83 (4th ed. 1971); Restatement (Second) of Torts § 222A (1965).

10. *See Georgia-Pac. Corp. v. Blakeney*, 353 So.2d 769, 773 (Miss.1978); *Masonite Corp. v. Williamson*, 404 So.2d at 568–69. "Under this rule delivered value is the approximate measure of damages." *Id.* at 568.

11. *Skrmetta v. Clark*, 180 Miss. 21, 29, 177 So. 11, 12 (1937); *Ingram Day Lumber Co. v. Robertson*, 129 Miss. 365, 382, 92 So. 289, 292

have Garrett repay what it spent to recover the converted carpet.[12] Garrett's purported good faith in purchasing the carpet is irrelevant in determining the fact of conversion.[13] Although "[t]he mere purchase of personal property in good faith from a person who has no right to sell it is not a conversion," a conversion nevertheless occurs when "the title of the lawful owner is made known and resisted or the purchaser exercises dominion over the property by use, sale, or possession." *Mississippi Motor Fin., Inc. v. Thomas,* 246 Miss. 14, 19, 149 So.2d 20, 23 (1963). Garrett's remedy, if any, lies in an action against Couch or Cartersville under Miss. Code Ann. § 75–2–312 [14] for breach of the implied warranty of title to the carpet shipped to Garrett by Cartersville. *E.g., Marvin v. Connelly, supra.*[15]

## IV

 The judgment is REVERSED. Judgment will be entered in favor of Textile Supplies and against Garrett as follows: $10,097.13, plus interest accrued on Garrett's open account with Textile Supplies,[16] for the carpet ordered from Textile Supplies but not paid for; $30,764.95, plus interest, for the carpet received from Couch and sold by Garrett; and $5,611.39 for expenses incurred to retrieve carpet from Garrett, plus costs.

(1922); *Bickell v. Colton,* 41 Miss. 368, 369 (1867); *see Hinds v. Terry,* 1 Miss. (1 Walker) 80, 83 (1820).

**12.** A plaintiff in a conversion action may recover reasonable expenses incurred to retrieve his property. *United States v. Pine River Logging & Improvement Co.,* 89 F. 907, 919 (8th Cir. 1898); *Western Land & Cattle Co. v. Hall,* 33 F. 236, 237–38 (W.D.Mo.1888); *Martinez v. Vigil,* 19 N.M. 306, 308, 142 P. 920, 921 (1914); *Renfro's Adm'x v. Hughes,* 69 Ala. 581, 583 (1881); *McDonald v. North,* 47 Barb. 530, 532 (N.Y. Sup.Ct.1867).

**13.** "[T]he well settled legal proposition [is] that ordinarily when one buys any consumer chattels which belong to another he becomes a converter and must pay for his conversion regardless of his good faith." *First Camden Nat'l Bank & Trust Co. v. J. R. Watkins Co.,* 122 F.2d 826, 826–27 (3d Cir. 1941) (footnote omitted); *accord, Carolina Cas. Ins. Co. v. Tisdale,* 46 Ala.App. 50, 56, 237 So.2d 855, 860 (Civ.), *cert. denied,* 286 Ala. 741, 237 So.2d 861 (1970); *Allred v. Hinkley,* 8 Utah 2d 73, 76, 328 P.2d 726, 728 (1958); W. Prosser, Handbook of the Law of Torts § 15, at 83 & n.13 (4th ed. 1971).

**14.** Section 75–2–312 provides:
WARRANTY OF TITLE AND AGAINST INFRINGEMENT; BUYER'S OBLIGATION AGAINST INFRINGEMENT.
(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that
  (a) the title conveyed shall be good, and its transfer rightful; and

  (b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.
(2) A warranty under subsection (1) will be excluded or modified only by a specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
(3) Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

**15.** *See American Container Corp. v. Hanley Trucking Corp.,* 111 N.J.Super. 322, 333, 268 A.2d 313, 319 (Ch.Div.1970); *Frank v. McCafferty Ford Co.,* 192 Pa.Super. 435, 437, 161 A.2d 896, 898 (1960).

**16.** Under Mississippi law a plaintiff who sues on an open account is entitled to recover interest from the date suit is filed. *Collins v. Carter,* 155 Miss. 600, 603, 125 So. 89, 90 (1929); *see United States v. Continental Cas. Co.,* 293 F.Supp. 816, 823 (N.D.Miss.1968); *J. R. Watkins Co. v. Runnels,* 252 Miss. 87, 93, 172 So.2d 567, 571 (1965).