**STANDARD LEASING CORPORATION, Federal Deposit Insurance Corporation, (formerly Farmers Bank and Trust of Winchester, Tennessee) and Charles N. Turner, Plaintiffs-Appellants,**

v.

**MISSOURI ROCK COMPANY, INC., Defendant-Respondent.**

**No. WD 35565.**

Missouri Court of Appeals,
Western District.

May 14, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 2, 1985.

Application to Transfer Denied
Aug. 7, 1985.

David H. Miller, Richmond, for plaintiffs-appellants.

Michael R. Roser, Kansas City, for defendant-respondent.

Before LOWENSTEIN, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

Plaintiffs appeal from a verdict and judgment in favor of defendant on plaintiffs' suit for replevin of two untitled Euclid R–35 rock trucks and damages for conversion. Standard Leasing Corporation complains of alleged errors in instructing the jury and in the admission of certain evidence. We affirm.

This dispute arises between innocent parties. Standard Leasing at the time this dispute arose was in the business of leasing large pieces of equipment, discounting the leases and selling them to financial institutions. The two rock trucks in dispute here were originally owned by Standard Leasing. Standard leased the trucks to a Dr. Kutz of Kentucky in December, 1976. The leases were discounted and sold to Farmers Bank and Trust (now plaintiff Federal Deposit Insurance Corporation) and to Gamaliel Bank of Gamaliel, Kentucky. Gamaliel Bank later reassigned its interest to plaintiff Charles Turner.

Dr. Kutz was unable to make his payments and after negotiations with Standard returned the trucks to the company for sale or lease. Standard then arranged for the Herco corporation of Albany, Georgia, to pick up the trucks in Kentucky and transport them to Herco's facility in Albany for repair.

Herco was a Georgia corporation that was in the business of leasing, selling, repairing, purchasing, and reconditioning heavy construction equipment. Its extensive facilities in Albany included an office, a separate parts warehouse, two repair facilities, and a large fenced lot where equipment was stored and displayed. Herco's president was Robert Herring, who was also a stockholder in the corporation.

Standard Leasing had leased equipment to Herco in the past and had always made UCC–1 filings concerning the leases. *See* 400.9–401; 400.9–402. After Herco had transported the trucks at issue here to Albany, Herco and Standard entered into negotiations for the lease of the equipment, but apparently an agreement was never reached. In any event, Standard made no UCC filings concerning Herco's possession of the Euclid trucks.

Lenny Cash, the president of Standard testified that Herco was only supposed to have the trucks for a couple of weeks, the time it would take to make the repairs. The market for the trucks at the time was very strong, and Standard anticipated selling or leasing them soon after the repairs were completed. Mr. Cash further testified that the repairs were not completed in the anticipated period and after several months Standard became concerned. Standard's concern was magnified when an unknown party attempted to blow up two of Standard's front-end loaders held by Herco on its property. Mr. Cash visited Herco the day after the attempted destruction and found that the trucks were still on Herco's property but the repairs had not been completed. He immediately began to make arrangements for the removal of the front-end loaders from Herco's premises.

Several months after Mr. Cash's visit to Herco, another employee of Standard, Mr. Miller, visited the Herco company. At that time the trucks were no longer in Herco's possession. Mr. Herring explained to Mr. Miller that Herco had leased the trucks but that he could not identify the lessee because Herco's records had been stolen. Standard reported the alleged theft to the appropriate law enforcement agencies. The FBI eventually found the trucks in defendant Missouri Rock Company's possession and informed Standard of the discovery.

Missouri Rock is a Missouri corporation engaged in the rock quarry business. In November of 1977, Missouri Rock decided to purchase two Euclid R–35 rock trucks. It contacted its regular equipment dealer, Dean Company of Kansas City. Dean did not handle that particular brand but agreed to act in effect as purchasing agent for Missouri Rock. Dean eventually located two Euclid R–35's being offered for sale by Superior Equipment Corporation of Albany, Georgia.

Superior Equipment was a Georgia corporation whose chief executive officer was Robert Herring, president of Herco, its president was Mr. Herring's friend and ex-Herco salesman, Danny Hatcher. Former FBI agent John R. Mauer testified for the plaintiffs at trial. He stated that in February, 1978, the FBI began to investigate allegations that Mr. Herring was fraudulently dealing in heavy equipment. In the course of Mr. Mauer's investigation he investigated Superior Equipment.

He testified that when Superior was incorporated it did no actual business. In the fall of 1977, Mr. Herring began to transfer the assets of Herco and other property held by Herco to Superior. At that time, Herco was defaulting on its debts and was the defendant in several lawsuits. Mr. Mauer concluded that Superior never functioned as a separate corporation and its only real purpose was to receive and hold Herco's property. His testimony concerning Superior was not contradicted or disputed.

Dean and Superior entered into negotiations for the sale of the two Euclid R–35 trucks. Dean retained an attorney who conducted a UCC search and found no filings on the trucks. The attorney also found no tax or judgment liens filed against Superior on the trucks.

The credit manager of Dean, Robert Thomas, testified that he asked Superior where it had acquired the trucks. He was told that they had been purchased from Triple J Mining of Alabama and was given a telephone number. Mr. Thomas found the given number listed in the appropriate phone book as Triple J's number. He called and spoke to a Ray Wyatt. Mr. Wyatt told him that Triple J had bought the trucks from Herco and had traded them to Superior. Plaintiff objected to this testimony at trial on the grounds that it was irrelevant and was hearsay. The court admitted it for the limited purpose of showing the defendant's state of mind and good faith.

Satisfied with Superior's ownership, Dean agreed to purchase the trucks on the condition that before the purchase money was delivered Superior supply the bill of sale concerning the alleged sale of the trucks by Triple J. Superior complied, and the transaction was completed. The bill of sale was admitted into evidence at trial for the limited purpose of showing that Dean received such a document and not to show that the sale by Triple J had actually occurred. Dean sold and delivered the trucks to Missouri Rock.

As we have noted, Standard was eventually informed by the FBI that Missouri Rock was in possession of the trucks. Standard filed suit for replevin of the two trucks and for damages for conversion. Defendant in its answer asserted the affirmative defense of entrustment pursuant to § 400.2–403.[1] The case was tried to the jury. Defendant submitted the following instruction on entrustment which was read to the jury.

INSTRUCTION NO. *13*

Your verdict must be for defendant Missouri Rock Company if you believe:

First, plaintiff Standard Leasing Corporation entrusted the rock trucks to Herco Corporation; and

Second, Herco Corporation was in the business of buying, repairing, and selling rock trucks and other heavy equipment; and

Third, Herco Corporation transferred the rock trucks to a buyer in ordinary course of business.

The instruction is derived from § 400.2–403(2) and (3), which are as follows:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

The jury returned a verdict in favor of defendant. Plaintiffs moved for a new trial which the court denied.

Standard Leasing raises two points on appeal: First, that the third part of defendant's entrustment instruction was not supported by any evidence admitted at trial. Standard concedes that parts one and two of the instruction were supported by the evidence. Standard further complains that the court incorrectly admitted the evidence concerning Superior's alleged acquisition of the Euclid trucks from Triple J Mining.

I.

■ Standard Leasing's first point on appeal concerns alleged errors in the

1. Revised Statutes of Missouri, 1978, part of Missouri's enactment of the Uniform Commercial Code.

**236**

court's instruction to the jury on defendant's entrustment defense. No Missouri Approved Instruction deals with an entrustment defense. Where there is no applicable M.A.I. instruction the non-M.A.I. instruction must be simple, brief and free from argument. Rule 70.02(e). Further, a jury instruction must be supported by evidence from which the jury could reasonably determine the issues submitted by the instruction. *Hopkins v. Goose Creek Land Co., Inc.,* 673 S.W.2d 465, 467 (Mo.App. 1984). In reviewing a challenged instruction we must view the evidence in the light most favorable to submission of the instruction. *Id.* To constitute reversible error, a mistaken instruction must have prejudiced the party challenging the mistake. *Yoos v. Jewish Hospital,* 645 S.W.2d 177, 189 (Mo.App.1982).

Plaintiffs' point is that no evidence was adduced to support the third part of defendant's instruction that Herco transferred the rock trucks in the ordinary course of business. Two possible explanations of how Superior came into possession of the trucks were presented at trial. Defendant presented hearsay evidence that Herco sold the Euclid vehicles to Triple J Mining and it in turn conveyed them to Superior. The evidence concerning the transfer was admitted only to show the state of mind and good faith of defendant. It was not admitted for the truth of the matter asserted and, therefore, could not support the third part of the instruction.

The second explanation of the transfer was presented by the plaintiffs. In fact, plaintiffs' whole argument and response to the defense was this explanation. As we have already observed, former FBI agent John Mauer testified for plaintiffs that Superior was never a functioning corporation but was only used for transferring the assets of Herco. Herco at the time was in financial trouble, defaulting on debts and being sued. Mr. Herring was president of Herco and chief operating officer of Superior, while his friend and Herco ex-salesman, Danny Hatcher, was Superior's president. From Mr. Mauer's testimony one can reasonably conclude as plaintiffs contended at trial that Superior was nothing but a shell corporation set up to shield Herco from its creditors. Therefore, we also conclude that the reference in paragraph third of Instruction No. 13 to Herco Corporation rather than to Superior was correct and proper and for that reason plaintiffs have made no particular complaint about that specific reference to Herco.

■ Even though no direct evidence was adduced that Herco transferred the Euclid R-35's to Superior, that is a reasonable inference from all the evidence. We agree with plaintiffs that such a transfer was not to a buyer in the ordinary course of business. Mr. Herring knew that the trucks were owned by Standard and his knowledge is imputed to Superior. Therefore, Superior could not have acted in good faith and without knowledge. § 400.1–201(9). But that conclusion is not decisive in favor of plaintiffs.

■ Plaintiffs argue that Superior was nothing but a sham set up only to defraud Herco's creditors. The legal fiction of the independent existence of the corporate entity will be disregarded where a corporation is created merely to defraud third persons, to promote injustice, or to accomplish an illegal act. *Ruckels v. Pryor,* 351 Mo. 819, 174 S.W.2d 185, 188 (1943); *Farmers & Merchants Bank v. Boland,* 175 S.W.2d 939, 947 (Mo.App.1943). One badge of fraud is a transfer by a debtor corporation of its property to a second corporation where both are controlled by the same person. *Fidelity and Casualty Co. v. Glass,* 327 S.W.2d 538, 541 (Mo. App.1959).

Ample and uncontradicted evidence strongly indicates that Superior Equipment was a sham set up to work at least an injustice if not to defraud third persons. Additionally, uncontradicted evidence established that Mr. Herring controlled both corporations—Herco and Superior. Therefore, we conclude that the judge in instructing the jury could properly disregard the corporate existence of Superior and conclude that Herco and Superior were the

same entity and, therefore, the same entrustee of Standard's property. Beyond argument, Superior's transfer to defendant was to a buyer in the ordinary course of business. Defendant diligently investigated the ownership of the trucks. It had no notice or knowledge of any other interest in the trucks besides Superior's claim of ownership. Plaintiffs do not dispute that the transfer from Superior to the defendants was in the ordinary course of business.

Our conclusion is consistent with the policy of § 400.2–403(2) to increase the marketability of goods. *See,* Padgett, *Uniform Commercial Code Section 2–403(2): The Authority of a Bailee to Convey Title,* 21 U.Fla.L.Rev. 241, at 251 (1968–69). Section 2–403(2) places a greater burden on bailors than previous uniform commercial statutory enactments to exercise discretion in entrusting their goods to bailees. *Id.* In our case, both plaintiffs and defendants are innocent victims of fraudulent schemers. But under UCC 2–403(2) Standard took the risk that its bailee might set up a sham corporation to aid it in its unlawful transfer of Standard's property. Where one of two innocent parties must suffer a loss occasioned by a third person, the person who enabled the acts of the wrongdoer must suffer the loss. *Rodekohr v. Gibson,* 414 S.W.2d 349, 352 (Mo.App.1967); *Pashalian v. Big-4 Chevrolet Co., Inc.,* 348 S.W.2d 628, 634 (Mo.App.1961).

## II.

Plaintiffs' second point is that the court erred in admitting evidence about the alleged sale of the rock trucks by Triple J Mining to Superior. Essentially, plaintiffs argue that Herco was a thief who had void title to the equipment and, therefore, could not cut off the interest of Standard even by a transfer to a buyer in the ordinary course. Since even a buyer in the ordinary course loses to the owner of stolen property, they contend, the state of mind of the purchaser is irrelevant and, therefore, the admitted evidence was not relevant to any issue in the case.

Plaintiffs' argument has no merit. They concede that the property was initially entrusted to Herco. Section 400.2–403(3) defines entrusting as delivery by the entrustor to the entrustee and the entrustor's acquiescence in possession by the entrustee. Theft involves the taking of property without the owner's consent, whereas in an entrustment the entrustor acquiesces in the entrustee's possession. Evidence concerning defendant's state of mind and good faith was essential to proving Missouri Rock's defense of entrustment and accordingly was highly relevant.

For the foregoing reasons, we hold that defendant's entrustment instruction was supported by sufficient evidence and that the court committed no error in the admission of evidence. The judgment is affirmed.

All concur.