Larry D. McLEOD, Appellant,

v.

McClelland D. BELOATE, Respondent.

No. WD 48282.

Missouri Court of Appeals,
Western District.

Nov. 22, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 27, 1994.

Application to Transfer Denied
Feb. 21, 1995.

Robert L. Shirkey, Jack B. Robertson, Kansas City, for appellant.

Keith W. Ferguson, St. Joseph, for respondent.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

PER CURIAM.

Larry D. McLeod appeals from a judgment in an automobile collision case. McLeod contends that the trial court erred by submitting an inappropriate right-of-way instruction to the jury, and by failing to grant him a new trial on the basis of the jury's inadequate award of damages.

The judgment is reversed.

This case arises from a motor vehicle accident which occurred at an uncontrolled "T" intersection in rural Buchanan County. McClelland D. Beloate was the driver of an automobile which had just crested a hill and was travelling downhill on a north-south gravel road which constituted the crossbar of the "T." McLeod was the sole occupant of an automobile which was in the process of completing a left turn onto the north-south road when it was struck from behind by the car Beloate was driving. Mark Deatherage was a passenger in Beloate's vehicle.

At trial, each of these three individuals offered a different description of the relative positions of the vehicles before the collision. Deatherage testified that he initially saw McLeod's vehicle when the Beloate vehicle passed over the crest of the hill, and Deatherage estimated that the crest of the hill was thirty to fifty feet away from the intersection where the collision occurred. According to Deatherage, McLeod had completed about twenty-five per cent of his left hand turn when Deatherage first saw his car. Deatherage stated that Beloate had been driving at forty-five miles per hour when he crested the hill, and that Beloate slammed on his brakes when he crested the hill and saw McLeod's vehicle in front of him.

Beloate testified that, when he crested the hill and first saw the McLeod vehicle, the McLeod vehicle was stopped, and was about to begin its left turn into the intersection. Beloate stated that, when he first saw the McLeod vehicle, the two cars were about thirty to forty feet apart, and McLeod was looking to his left, or away from the Beloate vehicle. Then, according to Beloate, McLeod moved forward into the intersection, and Beloate slammed on the brakes. Beloate testified that he had been driving at about forty-five miles per hour when he first saw the McLeod vehicle. Beloate also stated that the McLeod vehicle had completed between sixty and seventy per cent of the left-hand turn when the collision occurred.

McLeod testified that when he arrived at the intersection, he stopped and looked to his right. When he saw no vehicles approaching from the top of the hill, he proceeded into the intersection to make a left turn. McLeod further testified that, when the collision occurred, he had already completed his left turn and had been travelling at approximately five to seven miles per hour.

McLeod stated that he incurred approximately $9,000.00 in medical expenses as a result of the injuries which he sustained in the accident. He also stated that he missed nine months of work because of the injuries he sustained, resulting in lost wages totalling $26,000 to $27,000.

Near the end of the trial, Beloate's counsel presented the deposition testimony of Dr. Bruce Silverberg, who first treated McLeod approximately five months after the accident. McLeod had seen Dr. Silverberg for arm pain, but Dr. Silverberg testified that, from the records before him, he was unable to directly associate the arm injury to the automobile accident. Dr. Silverberg further testified that, based upon his diagnosis of McLeod's arm problem, he was unable to understand the necessity for the time which McLeod took off from work. Dr. Silverberg also found it contradictory that McLeod would be unable to return to work yet be

able to work in the yard and around the house—work which, according to Dr. Silverberg, McLeod appeared to have done.

The jury found the total amount of McLeod's damages from the accident to be $1,000. However, the jury also assessed ninety per cent of the fault for the accident to McLeod, reducing his damages to $100.

■ In his first point on appeal, McLeod claims that the trial court erred by submitting the following instruction:

In your verdict, you must assess a percentage of fault to plaintiff, whether or not defendant was partly at fault,

if you believe:

First, either:

plaintiff failed to keep a careful lookout, or

plaintiff failed to yield the right-of-way, or

plaintiff knew or by the use of the highest degree of care should have known that there was a reasonable likelihood of collision in time thereafter to have stopped, but plaintiff failed to do so, and

Second, plaintiff, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The phrase "yield the right-of-way" as used in this instruction means the driver on the left is required to yield if both vehicles reach the intersection at approximately the same time.

McLeod contends that the trial court erred by adding the right-of-way paragraph to the instruction because, given the evidence adduced in the case at bar, it was physically impossible for the two vehicles to have entered the intersection at approximately the same time, and therefore it was physically impossible for Beloate to have had the right-of-way.

The uncontested evidence in this case is that the automobile driven by Beloate collided with the *rear* of McLeod's vehicle. The significance of this fact is that McLeod's vehicle had already completed a left turn from a full stop after its arrival at the intersection by the time that Beloate's automobile entered the intersection and the collision ensued. Such a fact is incompatible with the proposition that both vehicles entered the intersection at approximately the same time.

■ It is error to give an instruction where there is no substantial evidence to support the issue submitted. *Cowan v. Perryman*, 740 S.W.2d 303, 304 (Mo.App.1987). There was such error in the case at bar, as there was no substantial evidence to support the right-of-way instruction contained in the instruction quoted above. To constitute reversible error, the mistaken instruction must have prejudiced the party challenging the mistake. *Standard Leasing Corp. v. Missouri Rock Company, Inc.*, 693 S.W.2d 232, 236 (Mo.App.1985). The mistaken instruction in the case at bar prejudiced McLeod because the failure to yield the right-of-way was one of several alternative grounds listed in a subsequent instruction for assessing a degree of comparative fault to McLeod.

In his second point on appeal, McLeod claims that the trial court abused its discretion by failing to grant his motion for a new trial on the ground that the damages awarded by the jury were grossly inadequate. However, in light of our disposition of McLeod's first point on appeal, we need not consider whether such an argument is meritorious.

In his third point on appeal, McLeod claims that the trial court erred in failing to grant him a new trial because "the facts could not have occurred in the manner claimed by the defendant." Because of our disposition of McLeod's first point on appeal, we will not consider whether such an argument is meritorious.

Accordingly, the judgment is reversed, and the cause is remanded for a new trial.