**In re AMERICANA SERVICES, INC., Debtor.**

**Steven C. BLOCK, Trustee, Plaintiff,**

v.

**WAREHOUSE CONSULTANTS, INC., et al., Defendants.**

Bankruptcy No. 93–43569–2.
Adv. No. 94–4054–2.

U.S. Bankruptcy Court,
W.D. Missouri.

Dec. 22, 1994.

James C. Mordy, Morrison & Hecker, Kansas City, MO, A. Bradley Bodamer, Morrison & Hecker, Overland Park, KS, for plaintiff.

Frank Wendt, Slagle, Bernard & Gorman, Patrick J. Doran, Niewald, Waldeck & Brown, Kansas City, MO, for defendants.

Steven C. Block, Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor Americana Services, Inc. filed its petition for relief on December 14, 1993. Steven C. Block was duly appointed trustee and brings this adversary action against Warehouse Consultants, Inc., R.D.D. & Associates, Inc., f/k/a Robert D. Dick & Associates, Inc., Robert D. Dick and Dottie K. Dick. Count I sought to avoid the transfer of certain assets by debtor through the use of 11 U.S.C. § 544, § 428.020 R.S.Mo. and § 1.170 R.S.Mo. and 11 U.S.C. § 550. Count II sought turnover of transferred property under an "Alter Ego" theory and the use of 11 U.S.C. § 542(a). Count III sought judgment against Robert D. Dick and Dottie K. Dick, personally, for damages, as a result of the alleged breach of fiduciary duty to the debtor corporation.

## BACKGROUND

Robert D. Dick (RDD) and Dottie K. Dick (DKD) were the sole shareholders, directors and officers of Debtor. Both RDD and DKD had been affiliated with Haas & Wilkerson, Inc., or Recreation Risk Managers, Inc. and had developed substantial business expertise in the specialty of insuring cold storage warehouse facilities on the part of RDD and the specialty of insuring fairs and carnivals on the part of DKD. Haas & Wilkerson, Inc. and Recreation Risk Managers, Inc. sued debtor and RDD on September 24, 1990, alleging breach of a nondisclosure and non-solicitation agreement. The prayer was for $362,000.00, plus interest, attorney fees and costs. The State court scheduled trial for August 19, 1991, as a result of an earlier pretrial conference.

As of July 31, 1991, debtor's financial statement showed assets of:

| | | |
|---|---|---|
| (1) | Cash | $164,281.53 |
| (2) | Secured Notes | 43,304.00 |
| (3) | Office Equipment | 17,115.02 |
| | | (depreciated value) |
| (4) | Cash value— life insurance | 8,020.00 |

and liabilities of $238.90 exclusive of the pending lawsuit.

On August 16, 1991, RDD and DKD caused debtor to wire transfer $139,000.00 from debtor's Kemper Money Market Account to debtor's checking account. That same date bonuses of $100,000.00 were paid to RDD and DKD and a $20,000.00 retainer was paid to the attorneys defending the lawsuit. On August 21, 1991, a jury verdict of $350,000.00 (exclusive of interest and costs) was returned by the jury against debtor.

On August 29, 1991, RDD and DKD incorporated Defendant Warehouse Consultants, Inc. (WCI). On or about August 30 or 31, 1991, RDD & DKD caused the business that Debtor wrote on the cold storage warehouses to be cancelled as to debtor and reissued on virtually the same terms and conditions with WCI. Thus, all profits from the business would no longer be the property of debtor, but instead would be the property of the new corporation. RDD and DKD were once again the sole stockholders, directors and officers of WCI. No consideration was paid to debtor for the transfer of a contract that in the past had generated over $300,000.00 gross profit annually. The tax returns show that debtor had average gross receipts in excess of $490,000.00 annually for the four years preceding 1991. Likewise, the tax returns of debtor show that RDD and DKD had received an average of $257,750.99 in salaries and bonuses for the five years preceding and including 1991.

The trustee argues that the transfers of $120,000.00 shortly after August 16th, rendered debtors insolvent because debtors' assets were $232,720.55 minus the $139,000.00, or $93,720.55 against a liability of $362,000.00 looming in the immediate future. That seems somewhat simplistic and viewed in the context of hindsight only. However, clearly when RDD & DKD transferred the contract with Atlantic Security Limited to WCI, debtor became and ever after was insolvent (except possibly for a brief period while the state court action was on appeal.)

WCI used the same office, same employees, same telephone number and serviced the same customers. The only difference was the name under which the operation was conducted. Meanwhile, at about the same time, RDD & DKD paid the other employees of debtor $5,400.00 in bonuses; paid $15,000.00 to debtor's pension plan (RDD & DKD were the principal beneficiaries), and sold debtor's life insurance policy on the life of RDD to DKD for $8,656.38. RDD & DKD collected the face amount of the notes debtor owned and had debtor's furniture appraised and sold to R.D. Dick and Associates for $13,538.00 which was below the appraised value. Likewise, RDD & DKD traded debtor's 1989 Cadillac for a new Cadillac and paid $14,000.00 (the trade in allowance by the dealer) to debtor. All of the transactions outlined above in this paragraph occurred between September 13, 1991, and September 23, 1991.

As of September 30, 1991 (monthly financial statement) Debtor had $73,399.53 in cash, owed $2,058.28 consisting of withholding taxes and had a judgment of $350,000.00 against it. However, RDD and DKD as sole stockholders, directors and officers of debtor, caused debtor to pay RDD a bonus of $50,000.00 as well as all the bills of winding up the corporate affairs.

RDD & DKD retained all the ownership, control and "perks" under WCI that they had had under debtor. In fact, as far as this Court could determine from the evidence presented was that only the name on the door and in the telephone book changed. In other words, it was the same old folks, conducting the same old business, with the same old customers, the same old employees, and the same old product at the same old location.

Meanwhile, the state court action was grinding its way through the judicial process. The trial court, on February 20, 1992, granted defendant Americana Services, Inc.'s motion for judgment N/O/V. That same judge had granted summary judgment to RDD, pretrial. Haas Wilkerson, Inc. and Recreation Risk Managers, Inc. appealed. The Kansas Court of Appeals, on May 7, 1993, reversed the trial court and ordered the jury verdict of $350,000.00 reinstated. However, the pretrial dismissal as to RDD was sustained.

Of course, by this time the proverbial horse had escaped the proverbial barn, and debtor was an empty shell with no assets.

The only question then is whether the transfer of the funds, and the business itself, was a fraudulent transfer under any section or sections of the Bankruptcy Reform Act of 1978. Application of § 548 is not available to the Trustee because more than one year had elapsed between the transfer dates and the petition date. However, 11 U.S.C. § 544(b) allows the trustee to use the state law in circumstances such as are present in this case. That requires the consideration of the Missouri statute governing fraudulent conveyances. That statute was (at all times pertinent) § 428.020 R.S.Mo. with a five year statute of limitations (§ 516.010 and 516.120 R.S.Mo.)[1]

### DISCUSSION

■■■ Turning first to Count I of the complaint, what elements must the trustee establish to prevail for a state law fraudulent conveyance action? First, that there has been one or more conveyances; second, that the conveyance or conveyances were made with the requisite intent to hinder, delay or defraud one or more creditors of the transferor. There is no question but what debtor made transfers. Fraudulent intent is rarely demonstrated by admission or confession. Thus, the law has developed a short list of events which are called "badges of fraud". The showing of one or more is not per se conclusive proof of malefaction. However, the more "badges" that are established by evidence, the more likely it is that a court will conclude that "he saieth not a pater noster there" to quote the ancient domestic relations courts.

In Missouri courts have identified these badges as follows:

1. conveyance to a spouse or near relative;

2. inadequacy of consideration for the transfer;

3. transactions different from the usual method of transacting business;

4. transfers in anticipation of suit or execution;

5. retention of possession by the transferor;

6. transfer of all or nearly all of a transferor's property;

7. insolvency before or after the transfer;

8. failure to produce evidence that rebuts or weakens the presumptions arising from the foregoing.

*Mark Twain Kansas City Bank v. Riccardi,* 865 S.W.2d 425 (Mo.App.W.D.1993) and cases cited therein.

Comparing the "badges" to the proven facts in this case is very illuminating. Step by step the following is shown:

1. Conveyance to a spouse or near relative.

The Missouri courts have held consistently that transfer from one corporation to another corporation controlled by the same person is effectively the equivalent of transfer to a spouse or near relative. *South Side National Bank v. Winfield Financial Services,* 783 S.W.2d 140 (Mo.App. 1989) l.c. 143 Citing *Standard Leasing Corp. v. Missouri Rock Co.,* 693 S.W.2d 232 (Mo.App.1985).

2. Inadequacy of consideration.

(a) No consideration was paid for the transfer of the business or the Atlantic Services Limited contract.

(b) No consideration was shown for the bonuses paid to RDD and DKD when the debtor was being liquidated.

(c) The $14,000.00 was an inadequate price for a two year old Cadillac.

(d) The price paid for the furniture was improperly figured.

3. Transactions different from usual method of transacting business.

(a) The $139,000.00 wire transfer was the only wire transfer shown;

(b) The sale of furniture;

(c) The sale of the company car;

1. Although § 428.020 has been repealed, § 1.170 saves same as to the acts done by the defendants herein.

(d) The transfer of the business to WCI;

Were all transactions different from the debtor's usual course of business as conducted before August of 1991?

4. Transfers in anticipation of suit.

(a) Most of the transfers were made just before trial or just after the $350,000.00 judgment was rendered.

5. Retention of possession.

(a) When all the transfers were completed, RDD and DKD had all the money, all the new stock, the new car, the bonuses, the pension benefits, everything they had before, just in different names.

6. Transfer of all or nearly all of the property.

(a) The evidence showed complete transfer except for minimal assets.

7. Insolvency before or after the transfers.

(a) If the judgment is given retrospective effect, the minute the business was transferred to WCI, debtor was insolvent. Debtor was not insolvent at the time of the first transfers but they were merely a part of a planned series of transfers from August 14, 1991, through September 1, 1991.

8. Failure to rebut.

(a) The only explanation given was that RDD wanted to present a "fresh approach" and thought a new start was the best way. Debtor could have changed its name without having to pay for a new corporation, or, go through all the financial transactions. No real purpose for all the expense and turmoil was ever shown.

Perhaps one of the strongest statements concerning intent is found in *Citizens National Bank v. Cook*, 857 S.W.2d 502 (Mo. App.1993) citing *Citizens Bank of Hayti v. McElvain*, 280 Mo. 505, 219 S.W. 75 (1920):

"If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act".

In view of the above, the Court finds that the transfers complained of, i.e.:

1. The $100,000.00 "bonuses" paid to RDD and DKD on August 16, 1991;
2. The $15,000.00 contribution to the pension plan;
3. The transfer of the furniture for an inadequate consideration;
4. The transfer of the Atlantic Security Limited contract or service agreement to WCI for zero consideration;
5. The transfer of the 1989 Cadillac for an inadequate consideration;
6. The $50,000.00 "bonus" paid to RDD on November 5, 1991;
7. The $4,000.00 "bonus" paid to RDD on May 19, 1993;

were all fraudulent in that, at least objectively, they were made for an inadequate consideration with the intent to hinder, delay, or defraud creditors and effectively rendered debtor insolvent. Since it appears to the Court that all of these events were merely single steps in one scheme to avoid any payment to plaintiffs, the precise moment of insolvency is not necessary to be determined. Obviously, if the steps are separated then insolvency occurred no later than September 1, 1991, or September 4, 1991, when the new service agreement between Atlantic Security Limited and WCI took effect.

■ The issues of alter ego and fiduciary duty of RDD and DKD are so closely allied, that they will be discussed together. Black's Law Dictionary Defines the Latin term (which the Court believes translates literally as "other I") as second self. It cites *Ivy v. Plyler*, 246 Cal.App.2d 678, 54 Cal.Rptr. 894 (1966) as follows:

Under doctrine of "alter ego", court merely disregards corporate entity and holds individual responsible for acts knowingly and intentionally done in the name of the corporation. l.c. 897.

■ This Court is quick to declare that a trustee may not bring a pure alter ego suits against third parties on behalf of corporate creditors on a general basis. *Caplin v. Ma-*

*rine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) and *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir.1987). However, *Ozark* does hold that a Trustee can pursue any causes of action belonging to the Debtor at the commencement of the case. Thus, the question arises, did the debtor possess one or more causes of action against RDD and DKD when the case was filed on December 14, 1993? Further, the District Court of the Western District of Missouri has declared that when a corporation is the alter ego or instrumentality of its shareholders, a judgment against the corporation also establishes the personal liability of the shareholders. *Omaha Indemnity Co. v. Royal American Managers, Inc.*, 755 F.Supp. 1451 (W.D.Mo. 1991).

That case also sets out the Missouri two-part test for alter ego liability:

"[F]irst, the corporation must be controlled and influenced by persons or another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud".

The Court has already visited this issue in some detail in its July 15, 1994, opinion. See *In re Americana Services, Inc.*, 173 B.R. 650, 25 Bankr.Ct.Dec. 1511 (Bkrtcy W.D.Mo. 1994). The passage of five months has not altered the Court's interpretation of the present status of the 8th Circuit's posture in regard to alter ego.

For these reasons the Court believes that judgment can and should be entered against defendants Robert D. Dick and Dottie K. Dick not only for the assets they received at the immediate transferees of the fraudulent conveyances, but also (as responsible parties under the alter ego theory) for all the transfers to corporations they owned and controlled.

█ The same result is obtained under the fiduciary theory. Shareholders, directors and officers can all occupy a fiduciary relationship to a corporation they control. Here RDD and DKD had total control as the sole shareholders, sole directors and sole officers of debtor. Likewise, RDD & Associates, Inc. had the same stockholders, same directors and same officers. While RDD & Associates, Inc. is liable only to the extent that it was the recipient of any transfer from debtor, RDD & DKD are liable for all of the transfers because of their breach of fiduciary duty to the debtor as well as their alter ego status in regard to debtor, RDD & Associates, Inc. and WCI.

## CONCLUSION

The Court rules that the $20,000.00 paid to counsel for debtor was not a fraudulent transfer nor was the transfer of the insurance policy for its cash surrender value. All of the other transfers, as set out above in this opinion, are fraudulent. Judgment is hereby entered against all immediate and mediate transferees of the respective transfer or transfers and they are found liable for the amounts which they received between the dates of August 14, 1991, and November 5, 1991. The Court will schedule a hearing to determine the dollar value to be assigned to the transfer of the Atlantic Security Limited contract and the other non-cash items or those items where inadequate consideration was paid, if the parties cannot agree. Judgment is entered against RDD and DKD for the value of all of the transfers declared fraudulent whether directly received by them or not.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.