ROBERTSON, Justice,
for the Court:
I.
This case about an almost new Cadillac turns on principles as old as the law itself. Appellant finance company appears this day as innocent as the driven snow but cannot escape that its borrower’s “rights” were born of a felonious fraud. The Circuit Court ruled the original conditional seller holder of a first perfected security interest. We affirm.
II.
In the Summer of 1989, near the end of the model year, a 1989 Cadillac Brougham sedan automobile, VIN 1G6DW51Y4KR715396, sat on the sales lot of McConnell Cadillac, Inc., in Mobile, Alabama. The Cadillac had been previously owned by a fleet rental company in Florida, and McConnell had bought it at auction. Of importance, in May of that year, the State of Florida had issued a Certificate of Title to the Cadillac, and, on July 19, 1989, the Florida owner assigned the title to McConnell.
Enter Rhonda G. Ross of Rocky Creek Road in Lucedale, Mississippi. On August 10, 1989, McConnell agreed to sell the Cadillac to Ross, and the two entered into a written agreement to that effect. The *738 sales price was some $22,500.00. Ross paid $3500.00 down, $2000.00 in cash and the balance by check. Ross simultaneously executed a garden variety installment sales contract and security agreement, granting McConnell a purchase money security interest in the Cadillac to secure her making the $505.49 monthly payments, plus other conventional obligations. McConnell then sold the contract and security interest to Central Bank of the South, also of Mobile, with full right of recourse.
Incident to the sale, McConnell’s title clerk, Tammy Burgess, executed an Alabama Assignment Supplement and attached it to the original (and theretofore assigned to McConnell) Florida Certificate of Title, reflecting that McConnell had sold the vehicle to Ross and noting the Bank as first lienholder.[1] At the same time, McConnell’s finance manager, Mike Cotner, executed an Odometer Disclosure Statement reflecting the Cadillac’s mileage as of the date of the sale to Ross. Because McConnell was not a designated title agent in Mississippi, title clerk Burgess then mailed the original Florida Certificate of Title with the assignment supplement and the customer’s copies of other sales documents to Ross in Lucedale, so that she could have a new Mississippi title issued. Ross’ signature appearing on the return receipt shows she received these papers on August 24, 1989.
As fate would have it, Ross’ $1500.00 down payment check bounced. To add insult to injury, Ross missed her September or October monthly payments to Central Bank. Becoming nervous, because it had received neither payment from Ross nor title certificate, Central Bank inquired of the Mississippi Motor Vehicle Comptroller and found that office had issued a new title certificate respecting the Cadillac, reflecting Gary Marcus Gunter as the owner and South Mississippi Finance Company as first lienholder.
We know not what happened in the days following August 24, but it seems on September 1, 1989, Gunter appeared at the Lucedale office of South Mississippi Finance and made application for a loan. He offered the Cadillac as collateral and produced the Florida Certificate of Title with the Alabama Assignment Supplement bearing the forged signature of McConnell title clerk Burgess and showing himself as owner. Gunter produced as well the McConnell-issued Odometer Disclosure Statement bearing the forged signature of McConnell’s finance manager, Cotner, also showing Gunter as the owner. South Mississippi Finance ran a routine credit check on Gunter, inspected the vehicle, but did not detect the forgeries, and on September 5, 1989, made Gunter a secured loan of $5000.00. Incident thereto, Gunter purported to grant South Mississippi Finance a security interest in the Cadillac. He delivered the Florida and Alabama title papers which, together with a Mississippi application, were forwarded to the Motor Vehicle Comptroller, who issued the new certificate here at issue.
Once all of this came to light, Central Bank of the South decided discretion was the better part of valor and exercised its right of recourse, demanding McConnell repurchase the contract. McConnell acquiesced and, effective November 10, 1989, reacquired Central Bank’s first lienholder position. McConnell then applied to the Mississippi Motor Vehicle Comptroller for revocation of the Certificate of Title issued Gunter and South Mississippi Finance on grounds it “was fraudulently procured or erroneously issued.” Miss.Code Ann. § 63-21-59(a) (1972). South Mississippi Finance objected and joined issue, but the Commissioner revoked the certificate and, *739 on January 19, 1990, the State Tax Commission’s Board of Review affirmed.
Thereafter, South Mississippi Finance sought review in the Circuit Court of George County, Mississippi, and demanded trial de novo. See Miss.Code Ann. § 63-21-61 (1972).[2] The Circuit Court took evidence from both parties. Without contradiction, the proof established that the signature on the Alabama dealer assignment supplement purporting to show a transfer of title from McConnell to Gunter was a forgery of the signature of Tammy Burgess. Moreover, the Odometer Disclosure Statement Gunter furnished South Mississippi Finance was found to bear the forged signature of Mike Cotner. Nothing in the record reflected any conveyance by Ross to Gunter of any interest in the Cadillac, nor do we know who the forger was.
In this state of the matter, the Circuit Court found that the Certificate of Title South Mississippi Finance held
was fraudulently procured and erroneously issued upon the presentment of documents bearing the forged signatures of employees of Defendant McConnell Cadillac, Inc.
The Court then upheld the order revoking the certificate and ordered the Comptroller to issue a new Certificate of Title reflecting Rhonda G. Ross as the owner and McConnell Cadillac, Inc. as the first and only lienholder of record.
South Mississippi Finance now appeals to this Court.
III.
South Mississippi Finance argues that it is an innocent purchaser for value and, as such, its rights should prevail and the judgment below be reversed. Conceding that “the facts in this case are not disputed,” and that “the whole issue turns upon the application of ... [Mississippi law] to said undisputed facts,” Brief of Appellant, p. 1, South Mississippi Finance claims of and through Gary Marcus Gun-ter. When it does so, it encounters a rule as old as the hills and often enforced without regard to context, viz., no thief, forger or other felonious fraud has power to pass title to his ill-gotten goods. See, e.g., Morgan v. Morgan, 431 So.2d 1119, 1120 (Miss.1983); Craig v. Columbus Compress & Warehouse Co., 210 So.2d 645, 648 (Miss.1968); St. Paul Fire & Marine Ins. Co. v. Leflore Bank & Trust Co., 254 Miss. 598, 609-10, 181 So.2d 913, 918 (1966). We have more than once said this of stolen automobiles, Allstate Insurance Company v. Estes, 345 So.2d 265, 266 (Miss.1977); Gurley v. The Phoenix Insurance Co., 233 Miss. 58, 61, 101 So.2d 101, 102 (1958), viz.,
A purchaser can take only those rights which his transferer has in the subject goods; a thief has neither title nor power to convey such.
Allstate, 345 So.2d at 266. We reiterated this view in Walker v. Johnson, 354 So.2d 792 (Miss.1978), where we held:
Even though the sale of the property is made to a bona fide purchaser for value, if it is stolen property, the person from whom it is stolen is not divested of his title.
Walker, 354 So.2d at 793.
It is certainly true the Sales Article of our version of the Uniform Commercial Code, see Miss.Code Ann. § 75-2-403(l)(d) (1972), imports a limited exception to this general rule, but that applies only where the “goods have been delivered under a transaction of purchase.” See Paschal v. Hamilton, 363 So.2d 1360, 1361 (Miss.1978). The exception has no effect here, as no one suggests Gunter acquired the car from Ross “under a transaction of purchase.” Moreover, South Mississippi Finance is not a purchaser, and Section 75-2-403(4) makes clear its rights are governed by UCC Article 9, Secured Transactions. Miss.Code Ann. §§ 75-9-101, et seq. (1972).
All of this brings us to Article 9, where we find it provided “a security interest is not enforceable against a debtor or third parties” unless, among other things, *740 “the debtor has rights in the collateral.” Miss.Code Ann. § 75-9-203(l)(c) (1972); C.I.T. Financial Services Corp. v. First National Bank of Jackson, 344 So.2d 125, 126 (Miss.1977). Gunter has no rights in the collateral, nor has he ever had any, a fact South Mississippi Finance concedes. It follows South Mississippi Finance could not in law acquire an enforceable security interest in the Cadillac.
Upon these premises, we may only hold that the Circuit Court, as well as the administrative authorities, were correct that the Gunter/South Mississippi Finance Certificate of Title had been “fraudulently procured,” by reason of which the Comptroller was charged to revoke it. Miss.Code Ann. § 63-21-59 (1972). We find the Cadillac still subject to the original May, 1989, Florida Certificate of Title which, via assignment, reposes title in McConnell Cadillac, Inc., and that we should respect that title. Cf. Memphis Bank & Trust Company v. Pate, 362 So.2d 1245, 1248-49 (Miss.1978). The application Rhonda Ross signed, together with the supporting documentation noted above, in law charges the Comptroller to issue the new Certificate of Title reflecting Ross as owner and McConnell Cadillac as first and only lienholder.
IV.
Nothing in South Mississippi Finance’s brief questions anything we have just said except our conclusion.
South Mississippi’s first point is a bit simplistic. It says McConnell offended our title law by sending the title documents to Ross. It notes the statute, which first directs the owner to prepare the application and deliver it to the lienholder, and then provides:
The lienholder shall immediately cause the certificate, application and required fee to be mailed or delivered to a county tax collector or a designated agent.
Miss.Code Ann. § 63-21-45(b) (1972). By sending the documents to Ross for her to deliver to a county tax collector or designated agent, McConnell transgressed the statute, or so we are told. The answer is in the language cited: “cause ... to be mailed or delivered....” The statute does not require the lienholder personally to mail or deliver the papers to the issuing agent, nor does it begin to imply loss of lien upon failure to follow its directive.
No doubt with the benefit of twenty-twenty hindsight, McConnell may have followed a more certain course — and, indeed, at oral argument, McConnell conceded it was no longer pursuing its former practice with its Mississippi customers. Within the language of the statute, however, McConnell did its due when it delivered the documents to Ross for her to deliver to the agent, who would issue the title certificate.
In the end, South Mississippi Finance sees its salvation in the equitable principle that
as applied between innocent persons, the one who is in best position to protect himself, should suffer any loss resulting from the fault of third party.
Western Casualty and Surety Co. v. Honeywell, Inc., 380 So.2d 1385, 1389 (Miss.1980). South Mississippi Finance faults McConnell for entrusting the documents of title to Rhonda Ross and says this was “sufficient to put a fraud in motion.” Arguing a “but for” thesis, South Mississippi tells us, if McConnell had itself forwarded the title documents to a designated issuing agent, this entire mess could never have occurred.
McConnell responds, calling our attention to the Circuit Court’s rather conclusory finding of fact.
Defendant McConnell Cadillac, Inc. did not create the circumstances that enabled Gary Marcus Gunter to perpetrate the fraud upon the parties in this action.
Other than entrusting Ross with the title documents, McConnell certainly did do nothing that “facilitated” the fraud, and to that extent we credit the finding. Gilchrist Machinery Co., Inc. v. Ross, 493 So.2d 1288, 1292 (Miss.1986); PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205 (Miss.1984). How McConnell handled the documents is undisputed and, as noted, our review must be de novo whether our law enters to strip it of its protection.
*741 On reflection, McConnell’s conduct was not so unreasonable as to import an estoppel. A party is not held estopped when he innocently, for any honest purpose and with reasonable care, pursues some course which a third party then takes advantage of and perpetrates a fraud. On these facts the only way Gunter could have acquired the papers he presented to South Mississippi Finance was that someone commit at least two separate criminal acts. We are not yet so cynical that we will charge McConnell to have foreseen when it dealt with Ross that a crime would be committed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.

. Our 1966 enactment of the Uniform Commercial Code accepted into our legal parlance the quite descriptive but quite pedestrian "security interest." Miss.Laws, ch. 316, § 1-201(37) (1966). The new term sought to oust the more potent and prosaic "lien.” Whether out of habit, or because there is power in short words, the lien resisted and gained a new lease on life with our Motor Vehicle Title Act in 1968, Miss.Laws, ch. 531 (1968), with its need for brevity in form. For today's and most other purposes, "lien” and "security interest" are synonymous labels for a single legal status, and, as well, a lienholder and a security interest holder are the same.

. The statute provides, after administrative denial, that the aggrieved party may petition the circuit court "for a hearing or review of such action of the comptroller.” Miss.Code Ann. § 63-21-61 (1972).