United States Court of Appeals

Fifth Circuit

**F I L E D**

July 18, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

**No. 02-60695**

_____

**ERIC EISENBERG**

**Plaintiff-Appellee**

**v.**

**GRAND BANK FOR SAVINGS, FSB, et al.**

**Defendants**

**RICK LENOIR**

**Defendant-Appellant.**

Appeal from the United States District Court
for the Southern District of Mississippi
(00-CV-263)

Before WIENER and CLEMENT, Circuit Judges, and LITTLE[*], District Judge.

LITTLE, District Judge:[**]

Rick Lenoir appeals the district court's summary judgment in favor of Eric

Eisenberg. The court ordered Lenoir to return funds to Eisenberg. As we shall explain,

the funds belonging to Eisenberg had been misappropriated by the malefactor and

---

[*] District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

deposited into Lenoir's account. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves two men connected through a common wrongdoer. From approximately 1995 to 1999, Douglas Reid performed multiple stock transactions as appellant Rick Lenoir's stockbroker. Reid used a letterhead that falsely represented him to be an agent of the Bear Stearns Company ("Bear Stearns"). In order to reduce paperwork, Lenoir asked Reid to send account summaries only upon his request in lieu of usual stock trade confirmations sent on a monthly basis.

In November 1999, appellee Eric Eisenberg invested money with Reid. Like Lenoir, Eisenberg was under the impression that Reid was affiliated with Bear Stearns. On 15 November 1999, Eisenberg wired Reid $1 million to an account entitled Douglas Reid d/b/a Bear Stearns ("Reid account"). Eisenberg expected Reid to invest for Eisenberg's account from the $1 million deposit. Within a week, Lenoir asked Reid to withdraw $415,000 from his account and transfer that sum to Lenoir. On 22 November 1999, Reid wired $415,000 from the Reid account to Lenoir's bank account at Grand Bank for Savings, FSB ("Grand Bank"). An investigation determined that Eisenberg's $1 million was the source of funds transferred by Reid to Lenoir's account. After a government investigation, Reid pled guilty to charges of money laundering and wire fraud.

2

On 17 October 2000, Eisenberg filed a complaint bottomed on diversity jurisdiction against Grand Bank and unknown defendants in the United States District Court, Southern District of Mississippi. In the complaint, Eisenberg alleged that $415,000 of his money was improperly transferred to Lenoir's account at Grand Bank. Ultimately, Lenoir, having received the money, became the lone defendant in the case. Eisenberg posited that Reid caused funds from the Eisenberg account to be deposited to Lenoir's account. Eisenberg sought return from Lenoir of the funds stolen. On 26 December 2001, Lenoir filed a motion for summary judgment and Eisenberg responded with a cross-motion for summary judgment. Applying Mississippi law, the district court granted Eisenberg's motion for summary judgment finding that the source of the funds was readily traceable to Eisenberg and that Lenoir parted with nothing of value to justify his retention of the stolen property. The court ordered Lenoir to pay Eisenberg $250,662.83,[1] plus post judgment interest and all costs of court. Lenoir subsequently filed the appeal that is presently before the court.

## II. DISCUSSION

### A. Standard of Review

This court reviews de novo a district court's grant of summary judgment, applying the same standard of review as the district court. See Gowesky v. Singer River Host Hosp. Sys., 321 F.3d 503, 507 (5th Cir.2003)(citing Walker v. Thompson, 214 F.3d

---

[1] The district court found that Eisenberg had previously recovered $749,337.17 of his $1 million from other sources. The court adjusted the amount owed by Lenoir to avoid double recovery.

615, 624 (5th Cir.2000)).  Summary judgment is appropriate  "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir.2000)(internal quotations and citations omitted). Doubts are resolved in favor of the nonmoving party, and any reasonable inferences are drawn in favor of that party.  Gowesky, 321 F.3d at 507 (citing Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir.1999)).

B.      Applicable Law

In diversity cases we apply state substantive law. See Krieser v. Hobbs, 166 F.3d 736, 739 (5th Cir.1999).  "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law." Hanley v. Forester, 903 F.2d 1030, 1032 (5th Cir.1990)(citing Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).  In deciding an unsettled issue of state law, we must consider how the Supreme Court of Mississippi has, or  would interpret the question.  See Batts v.

4

<u>Tow-Motor Forklift Co.</u>, 978 F.2d 1386, 1389 (5th Cir.1992)(citing <u>American Waste &</u>
<u>Pollution Control Co. v. Browning-Ferris, Inc.</u>, 949 F.2d 1384, 1386 (5th Cir.1991)). "When
we are required to make an <u>Erie</u> guess, it is not our role to create or modify state law,
rather only to predict it." <u>Id.</u>

C.    <u>Analysis</u>

The district court used a stolen property and a bona fide purchaser analysis to
support summary judgment in favor of Eisenberg.  The court noted that, under
Mississippi law, a thief cannot obtain or convey valid title to stolen property.  The court
also considered, and rejected, Lenoir's contention that he was a bonafide purchaser and
could acquire good title to the stolen funds.  Relying on an analogous case from the Sixth
Circuit, the district court concluded that Eisenberg was not a bona fide purchaser for
value.  The court stated that "a bona fide purchaser for value must have departed [sic]
with some valuable consideration to be entitled to invoke the legal protection provided
by that status."  The court held that even if Reid paid Lenoir $415,000 to satisfy a pre-
existing debt, Lenoir was not a bona fide purchaser for value.  The court noted "that one
who receives money from a thief in satisfaction of a pre-existing debt does not have a
defense against the person from whom the money was stolen."  Although the court
considered this case a "close question," the court held that summary judgment was
appropriate "based upon the fact that the $415,000 received by Lenoir from Reid came
directly from Eisenberg's funds and that Lenoir departed [sic] with nothing of value."

5

Lenoir contends that he was an innocent victim of Reid's deception. He simply requested a withdrawal of $415,000 from his account. After receiving the money, Lenoir expected his account to reflect the withdrawal. He states that he "never defrauded Eisenberg, nor did he attempt to take any money that rightfully belonged to Eisenberg." Lenoir argues that the district court erred in granting Eisenberg summary judgment for two[2] reasons: (1) a genuine issue of material fact exists precluding a finding of summary judgment; and (2) the court mistakenly concluded that Lenoir was not a bona fide purchaser for value. We discuss each of these arguments in turn.

### 1.     Genuine Issue of Material Fact

The Supreme Court has distinguished genuine issues of material fact from mere factual disputes. In Anderson v. Liberty Lobby, Inc., the Court stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

---

[2]In his original appellant brief filed 12 November 2002, Lenoir contends that summary judgment was inappropriate because the record "is devoid of affidavits, declarations or evidence of any sort." Lenoir appears to abandon this seemingly vague argument in his supplemental appellant brief filed 20 December 2002.

The parties dispute the balance in Lenoir's account with Reid during November 1999. Lenoir refers to a facsimile dated 1 March 1999 to show an account balance in excess of $1.5 million. Conversely, Eisenberg contends that account statements from November 1999 show Lenoir's balance as less than $40,000. Lenoir argues that this disagreement is a dispute of a genuine issue of material fact and, thus, precludes summary judgment.

The parties certainly disagree over Lenoir's November 1999 balance. The relevant query, however, is whether this is a dispute over a genuine issue of material fact. After reviewing the facts of this case, we conclude that this dispute is not sufficient to preclude summary judgment. The record contains only one set of contemporaneous account statements for November 1999. These statements show a total balance less than $40,000. Even if opposing evidence for this same time frame existed, such a dispute is not a genuine issue of material fact. As explained below, the actual amount in Lenoir's account prior to his withdrawal request does not affect the analysis or outcome of this case.

2. Bona Fide Purchaser for Value

On appeal, Lenoir argues that the district court erred by relying on Stone v. Webster, 199 F.2d 127 (6th Cir.1952), to find that he did not part with the valuable consideration necessary for a bona fide purchaser for value. In Stone, the Sixth Circuit

held that a recipient of stolen funds was not a bona fide purchaser for value since crediting the money the employee placed in its treasury did not constitute parting of consideration. 199 F.2d at 131. An employee of Stone and Webster Engineering Company ("Stone") stole $5000 from a bank and placed the money into the Stone treasury account to cover up his previous embezzlement. Stone argued that with respect to the $5000, it became a holder in due course, in good faith, and for value without knowledge of its employee's wrongdoings. Further, Stone contended that the money became commingled with, and indistinguishable from, other funds in the treasury. The Sixth Circuit disagreed, stating that "[t]rue, the weight of the authority is to the effect that it is sufficient for the receiver of stolen money to act in good faith and without notice of its tainted character. But he must also have parted with a valuable consideration therefor; and so, if he is a mere depository for the thief, the money may be recovered from him." Id.

Lenoir argues that the facts in Stone are distinguishable from the instant case. He contends that in Stone, the company was unaware that it received the deposited stolen funds. Lenoir asserts that when he requested the withdrawal from Reid, he expected his account balance to decrease by $415,000. He argues that since he can no longer withdraw the $415,000 from his account he parted with valuable consideration. Eisenberg, on the other hand, contends that Lenoir is not a bona fide purchaser for value even if Reid owed him a pre-existing debt. Eisenberg states that "[t]his is not a case where the transferee, Mr. Lenoir, 'has changed position after a transaction and it is

8

impossible or impractical to restore [him] to his ... original position,' such that 'restitution may be denied.'" (quoting 66 Am.Jur.2d Restitution and Implied Contracts § 144 (2001)).

The Mississippi Supreme Court defines bona fide purchasers for value as those who "advanced some new consideration, either in money or property, or have relinquished a pre-existing security for his debt, or have done some act on the faith of the purchase itself which cannot be retracted." Hinds v. Pugh, 48 Miss. 268, 1873 WL 6017, *4 (Miss. 1873). Here, the district court and the parties focus on whether Lenoir parted with valuable consideration as required for a bona fide purchaser for value. Before we consider this issue, we turn to Mississippi law surrounding stolen property and transfer of title. After a review of the pertinent case law, we conclude that whether Lenoir parted with valuable consideration and is a bona fide purchaser for value is irrelevant to the analysis of this case.

3. Transfer of Stolen Property

Mississippi law is clear that an individual who obtains goods in a fraudulent manner does not have the power to pass title to those goods. See South Mississippi Finance Co. v. Mississippi State Tax Comm'n, 605 So.2d 736, 739 (Miss.1992). A transferor can only pass the rights that he has in the goods and "a thief has neither title nor power to convey such." See Allstate Ins. Co. v. Estes, 345 So.2d 265, 266 (Miss.1977).

9

In Newman v. Stuart, the Supreme Court of Mississippi stated "[i]n this state, as in most states, the law is that neither the thief of stolen property nor his transferees, can convey any title or property right to such property. A bona fide purchaser of stolen property acquires no title or interest therein." 597 So.2d 609, 613-14 (Miss.1992)(citing Allstate Ins. Co. v. Estes, 345 So.2d 265,266 (Miss.1977)). In sum, Mississippi case law indicates that whether an individual is a bona fide purchaser for value is irrelevant to a stolen property analysis. Even someone who parted with valuable consideration, and otherwise meets the requirements of a bona fide purchaser for value, cannot acquire proper title to stolen property.

One issue remains before we can apply Mississippi stolen property analysis to the instant case. The Mississippi cases dealing with transfer of stolen property involve automobiles and other goods that are identifiable by their characteristics and title. The concern here is whether we can safely apply Mississippi stolen property analysis to a case involving stolen money. Money is not property in the usual sense. Money is fungible. Once transferred, money typically becomes commingled inside accounts and loses identifiable characteristics. Further, Mississippi law periodically treats currency different from ordinary goods. See, e.g., MS ST § 75-2-105(1)(Mississippi Uniform Commercial Code defining "goods" as "all things ... which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid"); MS ST § 75-3-102 (stating that Article 3 of the Mississippi Uniform Commercial Code applies to negotiable instruments and not money). As stated above, in situations

10

where Mississippi law is unsettled, we must attempt to predict how the Supreme Court of Mississippi would decide the issue.

The facts of this case show the funds at issue are traceable and identifiable. The Eisenberg's $1 million remained in an account until transferred to Lenoir. The record shows no evidence of any commingling of funds. In fact, the evidence admits of no other sustainable conclusion. On 15 November 1999, Eisenberg wired $1 million to an account at Wachovia Bank, N.A. ("Wachovia Bank") "for further credit to Bear Stearns." An account held at Wachovia Bank under the name Douglas Walter Reid d/b/a Bear Stearns ("Reid account") received a wire transfer in the amount of $1 million on 15 November 1999. Prior to this $1 million deposit, this account had a minuscule balance of $432.05. On 22 November 1999, $415,000 was wired from the Reid account to Lenoir's account held at Grand Bank Savings. During the week of 15 November 1999 to 22 November 1999, no other deposits were made to the Reid account. The record of transactions clearly traces the $415,000.

The identifiable nature of the funds allows this court to apply Mississippi case law regarding stolen property without reservation. Reid stole money from Eisenberg and transferred the funds to Lenoir. Reid had no right to the stolen money and therefore could not transfer any right to Lenoir. Lenoir's innocence of any involvement in the wrongdoing does not entitle him to retain the money. The funds were not commingled, but remained identifiable. Further, whether or not Lenoir parted with consideration, and could thus qualify as a bona fide purchaser for value, has no bearing on this analysis.

11

"Even though the sale of the property is made to a bona fide purchaser for value, if it is stolen property, the person from whom it was stolen is not divested of his title." See Walker v. Johnson, 354 So.2d 792, 793 (Miss.1978); see also Textile Supplies, Inc. v. Garrett, 687 F.2d 123, 127 (5th Cir.1982)(applying Mississippi law and finding that when a salesman stole carpet from his employer he obtained only "void title" and employer retained title to the carpet even after sale to unknowing buyer). We therefore need not decide whether Lenoir parted with valuable consideration or was a bona fide purchaser for value. Mississippi case law regarding stolen property requires Lenoir to return the $415,000 to Eisenberg. Lenoir cannot benefit from Reid's wrongdoing. See Hans v. Hans, 482 So.2d 1117, 1122 (Miss. 1986) (stating that unjust enrichment occurs when one "is in possession of money or property which in good conscience and justice he should not retain but should deliver to another").

## III. CONCLUSION

Mississippi case law is clear that a thief does not obtain title to stolen property and, subsequently, cannot transfer title even to an unknowing purchaser. The $415,000 deposited in Lenoir's account is readily identifiable as having come from funds stolen from Eisenberg. Lenoir's innocence of any wrongdoing and his unawareness of Reid's fraudulent behavior is irrelevant to this analysis. The money must be returned to Eisenberg. Lenoir, however, is not without recourse. Lenoir maintains a claim against

Reid for an accounting of his funds manipulated by Reid.  Accordingly, we AFFIRM the district court's decision in its entirety.